CASHMAR-KING SUPPLY COMPANY v. DOWD & KING.

(Filed 27 November, 1907).

1. **Principal and Agent—Ratification.**

The principal may not repudiate the act of his agent in compromising a debt due, and receive the benefit of the consideration therefor.

2. **Limitation of Actions—Compromise—Payments.**

When a payment is made by defendant only in contemplation of an agreed compromise of a debt, such payment will not repel the bar of the statute of limitations as to the balance thereof. Revisal, sec. 371, provides that "This section shall not alter the effect of the payment of any principal or interest," and leaves in operation the rule of law that the circumstances under which payment was made must be such as to warrant the clear inference that the debtor recognized the debt and his obligation to pay it.

3. Same—Mutual Accounts—Knowledge—Concurrence—Compromise.

> An account of transactions between two persons, to be mutual, when kept by only one of them, must be with the knowledge and concurrence of the other, so as to make a credit given to such other repel the bar of the statute of limitations.

CIVIL ACTION, tried before *Ferguson, J.,* and a jury, at July Term, 1907, of the Superior Court of MECKLENBURG County.

This action was brought to recover the sum of $1,274.02, being the balance of an account alleged to be due by Dowd & King, of which firm the defendant is a member, to the plaintiff, for money advanced and goods sold and delivered. The original amount was $7,589.18, but on 28 February, 1903, Dowd & King paid thereon $3,162.01, leaving a balance as of that date of $4,393.17. The debt of Dowd & King was contracted with the Dowd & King Supply Company, whose interest therein has passed to the plaintiff corporation, which is entitled to recover the balance of the account, if any is due. The firm of Dowd & King ceased to do business after the organization of the Dowd & King Supply Company and went into liquidation. On 16 March, 1904, the defendant W. F. Dowd agreed with S. F. King, his former partner, who was at the time the treasurer and general manager of the plaintiff company, that he would pay to the plaintiff the sum of $3,119.15 in full satisfaction and discharge of his part of the liability as a member of the firm of Dowd & King to the plaintiff for the said balance of $4,393.17, it being two-thirds thereof, which was W. F. Dowd's just proportion of the liability as between him and S. F. King, the said Dowd having an interest of two-thirds and King the remaining interest of one-third in the partnership of Dowd & King. In pursuance of this agreement, he paid the sum of $3,119.15 to S. F. King as treasurer and general manager of the plaintiff company in discharge of his said liability to it, and the money, or its equivalent, was received by King for that purpose and cred-

ited on the books of the plaintiff to Dowd & King by S. F. King. It appears that on 6 April, 1903, the Dowd & King Supply Company sold to Dowd & King merchandise to the amount of $6.25, and they are charged with that sum on the books of the supply company as of that date, and are credited with $34 collected by the supply company for Dowd & King as of 20 February, 1903. These amounts are included in the general balance of $7,589.18. The defendant W. F. Dowd, among other defenses, pleaded the statute of limitations. One of his defenses was that there had been a full accord and satisfaction of his liability to the plaintiff by virtue of the transactions between him and S. F. King, its treasurer and general manager. W. F. Dowd had been an officer of the Dowd & King Supply Company and was an officer of the plaintiff company before and after the transaction with S. F. King, but had no official connection with the latter company at the time of the said transaction. Evidence was taken upon the controverted matters between the parties, but it is not necessary to be stated, as it has no practical bearing upon the case as decided by the Court. The Court submitted three issues to the jury, which, with the answers thereto, are as follows:

"1. Is the defendant W. F. Dowd indebted to the plaintiff, and if so, in what amount?" Answer: "$1,274.02, with interest from 16 March, 1904."

"2. Was the payment of $3,119.15 in full accord and satisfaction, as alleged in the answer?" Answer: "No."

"3. Is the plaintiff's claim barred by the statute of limitations, as alleged in the answer?" Answer: "No."

At the close of the testimony the Judge charged the jury: "That if they found the facts to be in accordance with the testimony introduced in the cause, they would answer the first issue '$1,272.04, with interest from 16 March, 1904'; the second issue 'No,' and the third issue 'No.'"

Upon the verdict judgment was entered for the plaintiff, and the defendant appealed, having duly reserved exceptions to all errors in the rulings and charge of the Court.

*Stewart & McRae* for plaintiff.
*Pharr & Bell* and *T. C. Guthrie* for defendant.

WALKER, J., after stating the case: We need not stop to inquire whether S. F. King had sufficient authority to enter into the agreement with W. F. Dowd, by which the latter was discharged from all liability upon the debt due to the plaintiff by Dowd & King, as we decide the case upon another ground, though we are inclined to the opinion that there was no evidence of authorization or of ratification by the plaintiff.

The plaintiff's cause of action is barred by the statute of limitations, in any view of the evidence. It was not denied that W. F. Dowd paid the money to the plaintiff through its general manager, S. F. King, in full satisfaction and discharge of his liability to the plaintiff. It was only contended that King had no express authority to make the settlement with Dowd, and that there was no ratification of his act by the plaintiff, and especially that King was interested in the transaction and could not, therefore, represent his principal so as to bind it. Whether the agent must derive some personal benefit from the transaction in order to disqualify him to act for his principal and so as to produce a conflict between his own interest and that of his principal, is another question, which was ably argued before us, but the discussion of which we may well pretermit.

If W. F. Dowd paid the money to King as general manager in satisfaction of his liability, it is not within the power of the plaintiff to repudiate his act as being one not authorized, and apply the money as a payment on the debt. The money must be accepted according to the intention of the parties to the transaction and applied accordingly; that is, to the full discharge of Dowd's liability, or rejected for the want of

authority, in which case the parties would be restored to their original rights.   Sound morality and fair dealing imperatively require the law to apply this rule to our business affairs. The plaintiff is not permitted "to blow hot and cold," or to accept and reject at the same time.   As the two rights are conflicting, the law gives to it an election to ratify the act of its agent when it was discovered and thereby discharge Dowd, or to reject the unauthorized act and stand upon its rights, unaffected by it.   This principle is such a just and salutary one that it would surprise us if we should find that the law had not adopted it.   But the law has, and by the decisions of this very Court it has been fully recognized and applied to cases very much like the one at bar.   What stronger statement of the doctrine do we need than the language of the Court in *Hewlett v. Schenck,* 82 N. C., 234, as follows: "A partial payment, though the evidence need not be in writing, being *an act* and not a mere declaration, revives the liability, because it is deemed a recognition of it and an assumption anew of the balance due.   But if at the time such payment is made the presumption arising from the unexplained fact is disproved by the attending circumstances or other sufficient evidence of a contrary intent, the payment will not have such effect.   Here, not only can no inference of such intention be inferred, but there was an express agreement that Hart was not to be held responsible for the residue of his principal's defalcation, and the payment is made upon that understanding.   While the chairman had no authority to enter into such an engagement, and if he had, it would be inoperative for want of a consideration, as is held in *McKenzie v. Culbreth,* 66 N. C., 534; *Bryan v. Foy,* 69 N. C., 45, and *Mitchell v. Sawyer,* 71 N. C., 70, the evidence is competent and sufficient to repel the presumption of intention to assume the entire debt.   *Smith v. Leeper,* 32 N. C., 86; Angell Lim., 211, *et seq.,* note, and numerous other cases cited for the defendants from reports in other States."   The law as to the legal effect

of a partial payment in discharging the entire debt, where there is an agreement of that kind, has been changed by the Acts of 1874-'75, ch. 178 (Revisal, sec. 859). But that change does not in the least impair the force of the case we have cited as a conclusive authority against the plaintiff upon the facts in the record before us. The Revisal, sec. 371, declares as follows: "No acknowledgment or promise shall be received as evidence of a new or continuing contract from which the statute of limitations shall run, unless the same be contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest." It will be seen that there is no express provision that a partial payment shall prevent the operation of the statute except from the time it was made. The statute merely leaves its effect to be determined by the law as it was before the enactment of the section as to a new promise. There was no reference in the Statute of 21 Jas. I., ch. 26, to a payment as operating to stop the running of the statute and as fixing a new *terminus a quo,* as in the case of a promise to pay. A payment was allowed this effect by the courts, and for the reason that it raised an implied promise to pay the residue of the debt. But the rule is limited in its application to the reason upon which it is based, and the payment consequently must have been made under such circumstances as will warrant the clear inference that the debtor recognized the debt as then existing, and his willingness, or at least his obligation, to pay the balance. *Battle v. Battle,* 116 N. C., 161; *Pickett v. King,* 34 Barbour (N. Y.), 193; *Richardson v. Thomas,* 13 Gray, 381; 1 Wood on Limitations, sec. 99; *Bank v. Harris,* 96 N. C., 121; *Riggs v. Roberts,* 85 N. C., 151. The payment should be of such a nature and made in such a way as to imply in law that the debtor acknowledges the debt as still existing and promises distinctly and unequivocally to pay the same, just as *Lord Ellenborough,* in *Fleming v. Hayne,* 1 Starkie, 370, said should be the char-

acter of the promise when it is express. In 25 Cyc. of Law, p. 1373, we find it said: "A payment of part, in full satisfaction of the whole, or accompanied by acts or declarations showing that the debtor does not intend to pay the balance, will not suspend the statute or revive the balance of a barred debt." *Linsell v. Bonsor,* 29 E. C. L., 319 (9 Bing. N. C., 241); *Jones v. Langhorne,* 19 Col., 206; *Brisbin v. Farmer,* 16 Minn., 215; *Compton v. Bowns,* 25 N. Y. Suppl., 465 (5 Misc., 213); *Rowker v. Harris,* 30 Vt., 424; *United States v. Wilder,* 13 Wall., 254; *Crow v. Gleason,* 141 N. Y., 489; *Aldrich v. Morse,* 28 Vt., 642; *Hale v. Morse,* 49 Conn., 481; *Jewitt v. Petit,* 4 Mich., 508; *Croushore v. Knox,* 10 Atl. Rep., 25. In *Compton v. Bowns, supra,* the Court (at page 466) says: "It is elementary law that the effect of part payment in defeating the operation of the statute of limitations depends upon the promise it implies to pay the residue; but if the payment be intended, not as a discharge *pro tanto,* but as a complete liquidation of the entire demand, how can an engagement to pay more be inferred? The implication of an acknowledgment of the continuance of the debt from an act supposed and designed to extinguish it, and of a promise of further payment from a payment made and intended as final and complete, is a palpable absurdity," citing *Weston v. Hodgkins,* 136 Mass., 326, and other authorities. *Compton v. Bowns* seems to be directly in point as to all the questions considered by us in this case. The general principle on which part payment takes a case out of the statute is, that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, then the statute, having begun to run, will not be stopped by reason of such payment. *United States v. Wilder, supra.*

The intention of W. F. Dowd to pay only in full settlement and discharge of his liability is too plain in this case to admit of the slightest doubt. He expressly stipulated for exemption from payment of the balance of the debt.

The law will not permit the amount collected by the Dowd
& King Supply Company from Dowd & King, to-wit, $34,
and credited on their account without any authority from
them, and the amount collected, $6.25, to be considered as
constituting a mutual account between the parties, so as to
put the statute in motion only from the last item.    In *Hussey
v. Burgwyn,* 51 N. C., 385, it was said that the sending of a
draft to the creditor, without any reference to the debt, was
not sufficient to stop the running of the statute.    It was also
held that, in order to make an account a continuing one from
its commencement to its close, there must be mutual accounts
between the parties, or an account of mutual dealings kept by
one only, with the knowledge and concurrence of the other,
for otherwise an item within time cannot have the effect of
preventing the application of the statute.    As said in that
case, "Here there was no mutual account kept by the parties,
and there was no proof that the defendant entrusted the plain-
tiff to keep such an one."    The $6.25 for merchandise was a
distinct item, disconnected from the prior account, Dowd &
King having gone out of business and being then in liquida-
tion, and the credit of $34 for collections was applied to the
old account without authority.    There was no semblance of a
mutuality of accounts.    The cause of action accrued not later
than 28 February, 1903, and was barred on 1 March, 1906,
when the action was brought.

The charge of the Court was, therefore, erroneous.    It
should have been the very reverse of what it was as to the
third issue.

New Trial.