THOMAS KILPATRICK v. W. D. KILPATRICK.

(Filed 9 April, 1924.)

**1. Limitation of Actions—Statutes—Payment.**

C. S., 416, providing that a promise to repel the running of the statute of limitations, unless contained in some writing signed by the party to be charged thereby, etc., expressly excepts from its provisions the effect of any payment of principal or interest, thereby leaving as to such payments the principles obtaining at common law before the enactment of the statute.

**2. Same—Instructions—Appeal and Error.**

When the running of the statute of limitations would otherwise bar an action upon an account, and there is evidence tending to show a credit thereon was agreed to by the creditor and debtor within the three-year

period, and accordingly given, the effect of this credit to repel the bar relates to the time of the agreement made and effected; and an instruction that made it depend upon the time of the debt incurred for which the credit was given, is reversible error to the plaintiff's prejudice.

APPEAL by plaintiff from *Grady, J.,* at August Term, 1923, of DUPLIN.

Civil action. The action is to recover a balance due on account. Plea, the statute of limitations. Summons issued 24 December, 1921.

There was evidence on the part of plaintiff tending to show that he had a running account for goods sold and money advanced, etc., against defendant, who was his brother, a large part of which was for items, etc., bearing date in 1897 and 1898, to the amount of $750 and more. There were also some additional items in 1899 and 1905 and 1906, and also in 1917. That in 1919 he approached his brother and solicited a payment of or on the account held by plaintiff, saying, among other things, that plaintiff was indebted to defendant for building a house on plaintiff's land in 1898, and which was to be paid for when a settlement was had between them, ascertaining the amount due. That no such settlement was ever had to that time, and plaintiff suggested a credit of $150 as a proper amount to be allowed for building the house. Defendant said he had forgotten about the house, and to give him credit for what plaintiff thought it was worth. Plaintiff said he ran the amount up to $200 for the house, and asked defendant if that was satisfactory to him, and he replied, "Just whatever you think is right," "and I thereupon gave him a credit on my account for $200. This was on 10 January, 1919." Plaintiff testified further as follows:

"I was at his house when I gave him credit for the $200. I asked if he could not pay me something, and he asked how much he owed me. He said, if I thought $200 was what building the house was worth, to give him credit for what I thought it worth, and I told him I would give him credit for $200. I did not show him the original account. The book with the original account had been left with him. I had added the account up, and when I got the book the account was torn out, and that is the reason I have not got the original account. This is the original book of accounts. Here is where he tore it out. This account was not indexed; don't know why; just put the whole thing in the book. After the account was torn out, I remembered the dollars it amounted to, but not the cents. I didn't get the whole thing. He bought a stock of goods from me in 1897. The oil tank and scales were left with him in the store. Didn't sell them to him; he took them away with him in 1917. I got the book from him before he left, in 1917. It was about 1916 when I wrote down the account I now have. He left in 1917, and the $200 credit was put down in 1919. I did not put down

all the account at one setting; did not put it all down at one time."
(Book showing the account sued on, and the credit of $200 for building
the house, offered in evidence.)

The case was submitted on the issue whether same was barred by the
statute. And, in reference to the effect of the alleged credit of $200
allowed for building the house in 1898, the court, among other things,
charged the jury: "The plaintiff contends that the work was done
something like ten years ago, and in 1919 he agreed that the credit
should be $200. . Gentlemen, the time the credit must be applied must be
at the time the work was done, and not when the credit was applied.
Therefore, I charge you that, if you believe all the evidence in the case,
you will answer this issue 'Yes,' that it is barred by the statute of limita-
tions."

Plaintiff excepted. Verdict for defendant. Judgment, and plaintiff
appealed, assigning errors.

*Oscar B. Turner for plaintiff.*
*No counsel for defendant.*

HOKE, J. Our statute (C. S., 416) provides that no acknowledgment
or promise is evidence of a new or continuing contract, from which
statute of limitations runs, unless it is contained in some writing, signed
by the party to be charged thereby, "but this section does not alter the
effect of any payment of principal or interest." And in our decisions
construing the section it is held that the same does not restrict or
modify in any way the effect of a payment under the general principles
prevailing in this jurisdiction when the statute was enacted. *Battle v.
Battle,* 116 N. C., 161; *Bank v. Harris,* 96 N. C., 118; *Riggs v. Roberts,*
85 N. C., 152.

Considering the record in view of this position, the question pre-
sented is whether the facts in evidence on the part of plaintiff, accepted
as true and interpreted in the light most favorable to him, permit the
reasonable inference or finding that there was a payment by defendant
on plaintiff's account as claimed by him within three years next before
action brought (24 December, 1921), and under circumstances consti-
tuting a renewal of defendant's indebtedness. In this connection it is
well understood that mutual debts do not *per se* extinguish each other,
and that in order for one to constitute a payment of another, in whole
or in part, there must be an agreement between the creditor and the
debtor that the one shall be applied in satisfaction of the other, in whole
or *pro tanto,* according to the respective amounts.

Thus, in *Bank v. Harris, supra,* it is held: "The effect of section 172
of The Code is to leave the law as it was prior to the adoption of the

Code of Civil Procedure as regards the effect of a partial payment in removing the bar of the statute of limitations. The fact that the maker of a note has a claim against the holder, which the holder endorses as a credit on the note without the assent of the maker, will not be such a partial payment as will rebut the statute of limitations, but an agreement to apply one existing liability to another is such a partial payment as will stop the operation of the statute, although the endorsement is never actually made on the note."

In 30 Cyc., a payment is said to be "a delivery by the debtor or his representative to the creditor, or his representative, of money or something accepted by the creditor as the equivalent thereof, with the intent on the part of the debtor to pay the debt, in whole or in part, and accepted as payment by the creditor." And in support of this definition the author cites, among other cases, *Borland v. Bank,* 99 Cal., p. 89, to the effect "That payment, like a sale, can result only from the mutual agreement of the parties that the transaction shall have that effect, and without such consent the transaction cannot be treated by the court as a payment."

And in 21 R. C. L., Title, Payment, sec. 3, it is said: "The authorities agree that to constitute payment, the money or other thing must pass from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for that purpose."

And, as pertinent to the inquiry, the authorities further hold that, in order to constitute a renewal of an account or obligation otherwise barred by the statute of limitations, the alleged payment must be made and received "under circumstances permitting the inference that the debtor did so in recognition of the existence of the debt and of his obligation to pay the same." *Supply Co. v. Dowd,* 146 N. C., 191; *Battle v. Battle, supra; Riggs v. Roberts, supra.*

On a proper application of these authorities, and the principles they approve and illustrate, we must conclude that if any payment was made by defendant on plaintiff's account, it took place not when the house was built by plaintiff, in 1898, but in January, 1919, when, according to plaintiff's version, it was agreed between the parties that defendant's claim for building the house should be credited as a payment on plaintiff's account. And, on the facts in evidence, plaintiff is entitled to have the issue submitted to the jury on the question whether it was agreed between the parties in 1919 that defendant's claim for building the house should be then received as a payment on the entire account of plaintiff or on any part of same, and if so, what part.

There should be a new trial of the issue, and it is so ordered.

New trial.