C. H. NANCE v. J. A. AND J. H. HULIN, TRADING AS HULIN BROTHERS.

(Filed 8 December, 1926.) .

**Bills and Notes—Negotiable Instruments—Endorsers—Mortgages—Partial Payment—Limitation of Actions—Statutes.**

> Where a chattel mortgage on crops secures the payment of the maker's note and the mortgagee endorses the note, C. S., 441, 3044, and mortgages to another, the bar of the three-years' statute of limitations which has otherwise run will not be repelled by payments on the note from the sale of the crop, as against the endorser, or without evidence of his intent to make the payment and thus impliedly at least acknowledge the debt; and his having attended the mortgage sale of the crop and become a purchaser, is not sufficient.

APPEAL by defendants from *Yount, Special Judge,* at April Term, 1926, of MONTGOMERY. New trial.

On 10 January, 1922, Fradger Little executed his promissory note to the defendants for $489.36, payable 1 November, 1922, and on 10 August, 1922, the defendants duly endorsed the note to the plaintiff. The note was secured by a chattel mortgage (which also was assigned to the plaintiff) on Little's interest in certain crops. On 28 July, 1923, the plaintiff credited on the note $89.30 and $8.25, each sum having been received from the sale of property embraced in the mortgage. The plaintiff testified that J. A. Hulin, one of the defendants, attended the sale and bought corn at the price of $89.30 and potatoes at $8.25. These are the only payments that have been made on the note. The summons was issued on 16 December, 1925.

*Brittain, Brittain & Brittain for defendants.*

ADAMS, J. The liability of the defendants was that of endorsers and as against them the plaintiff's cause of action was barred by the three-year statute of limitations. C. S., 441, 3044; *Houser v. Fayssoux,* 168 N. C., 1; *Bank v. Wilson, ibid.,* 557; *Dillard v. Mercantile Co.,* 190 N. C., 225. The statute of limitations began to run at the maturity of the note—1 November, 1922. *Triplett v. Foster,* 115 N. C., 335. The action was brought on 16 December, 1925, and is barred unless the alleged payments arrested the running of the statute. The trial judge instructed the jury that if the two payments were credited on the note "by virtue of sales of goods embraced in the chattel mortgage assigned to the plaintiff as security with the knowledge and consent of the defendants the credits would stop the running of the statute and it would run anew from that date." C. S., 416.

This instruction, we think, is subject to exception. In *Battle v. Battle,* 116 N. C., 161, it is said that the effect of a partial payment is not

of statutory origin, but is an exception conceded by the courts, and that such effect is allowed only when the payment is made under such circumstances as will warrant the clear inference that the debtor recognizes the debt and his obligation to pay the remainder due. It is necessary that the payment be voluntary, that it be such as to imply in law that the debtor acknowledges the debt and distinctly promises to pay it; but a payment made under circumstances which repel such implied promise will not stop the running of the statute. *Hewlett v. Schenck,* 82 N. C., 234; *Supply Co. v. Dowd,* 146 N. C., 191; *Kilpatrick v. Kilpatrick,* 187 N. C., 520. In *Bank v. King,* 164 N. C., 303, the defendants executed their note to the plaintiff, a bank, and authorized the cashier to sell certain collateral securities and to apply the proceeds to the payment of the note. On the theory that the debtors had appointed the cashier their agent to sell the securities and to apply the proceeds, and had agreed to remain liable to the holder of the note for any deficiency, it was held that such sale and payment repelled the bar of the statute. The facts are distinguishable from those in the present appeal. It is true that the plaintiff seized the mortgaged property, or a part of it, at the suggestion of the defendants and requested J. A. Hulin to attend the sale and "protect his interest by bidding on the crops"; but Hulin's purchase of the corn and potatoes did not necessarily imply an acknowledgment of his liability or his voluntary payment as an endorser, and the mere entry of the two payments as credits on the note "with the knowledge and consent of the defendants" would not of itself arrest the running of the statute. With or without the consent of the defendants, it was the duty of the endorsee to credit the payments. The element of the intent of the parties seems not to have been considered. The error complained of entitles the defendants to a

New trial.