MSR ENTERPRISES, INC. v. GENERAL MOTORS CORPORATION
AND GENERAL MOTORS ACCEPTANCE CORPORATION

No. 7526SC220

(Filed 1 October 1975)

**Trover and Conversion § 2— failure to pay repair bill — retention of truck — no conversion by repairer**

In an action to recover damages for wrongful detention and conversion of plaintiff's truck, the trial court properly entered summary judgment for defendant where pleadings, depositions and affidavits tended to show that plaintiff delivered its truck to defendant on 22 January 1973 for the purpose of making some repairs, defendant completed the repairs on 23 January 1973, defendant thereafter refused to release the truck to plaintiff since at no time prior to 27 January 1973 did plaintiff pay or offer to pay defendant's bill in cash and the repairs were not covered by warranty, plaintiff did not effectively tender payment by requesting defendant to apply the repair bill against a credit balance which plaintiff asserted it then had against defendant, and by 27 January 1973 the truck was repossessed by GMAC.

APPEAL by plaintiff from *Anglin, Judge.* Judgment entered 19 December 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 May 1975.

Plaintiff brought this civil action against General Motors Corporation (GMC) and against General Motors Acceptance Corporation (GMAC) to recover damages for wrongful detention and conversion of plaintiff's truck. In its complaint, filed 15 February 1973, plaintiff in substance alleged: Plaintiff is engaged in the trucking business. In November 1972 it purchased from GMC a 1973 GMC model truck. On 21 January 1973 plaintiff loaded a cargo of paper in Louisiana to be transported to Cleveland, Ohio. On 22 January 1973 the truck arrived in Charlotte, N. C., on its way to Cleveland. One of the windows in the truck had fallen out and the dash lights were not working. Believing the truck still to be under warranty, plaintiff took it to GMC's place of business in Charlotte for necessary repairs. In 23 January 1973 the repairs were completed and plaintiff went to pick up the truck. GMC refused to release it, stating it had been instructed by GMAC to hold the truck because the December 1972 payment on the truck was past due. Plaintiff informed GMC that prior arrangements had been made made with GMAC for payment of the December 1972 installment, but GMC still refused to release the truck. The repair bill was $46.45. Believing the repairs were covered by warranty,

plaintiff nevertheless tendered payment of the repair bill by asking GMC to apply the bill to a credit balance which plaintiff had with GMC at that time. GMC refused to do this and refused to release the truck. On 30 January 1973 plaintiff obtained a relief tractor and delivered the paper to Cleveland, arriving there on 1 February 1973. The customer refused to accept the late shipment, and by reason thereof plaintiff suffered damages by costs incurred for storage of the paper in Cleveland and for loss of its freight charges for transporting the paper. In addition, because of the delay in delivery of the paper, a profitable hauling contract held by plaintiff was canceled, resulting in lost profits to plaintiff. The repossession of the truck by GMAC and the proposed sale of the truck on 16 February 1973 are illegal and will result in further damages to plaintiff. Plaintiff prayed for recovery of actual damages, consisting of its costs incurred in storing the paper, its lost freight charge, and loss of profits from the canceled contract, in the amount of $750,900.00 and asked for punitive damages in the amount of $500,000.00 from both defendants. Plaintiff also sought an injunction restraining GMAC from selling the truck.

GMAC filed answer containing a counterclaim in which it alleged that when plaintiff purchased the truck from GMC on 9 November 1972 it executed a Purchase Money Security Agreement by which plaintiff promised to pay a total time-deferred balance of $28,503.72 in monthly installments commencing 24 December 1972. GMAC became holder for value of the Security Agreement and thereby obtained a purchase money security interest in the truck. Plaintiff has defaulted under the agreement in that it has made no payments under the terms of the contract. On 27 January 1973 GMAC took possession of the truck in order that it might foreclose its security interest therein. At that time plaintiff owed GMAC $28,503.72. GMAC prayed judgment against plaintiff in that amount plus interest and attorney's fees and asked that it be declared owner of the truck as against plaintiff for the purpose of foreclosing its security interest.

Plaintiff filed to reply to GMAC's counterclaim and on 20 June 1973 default was entered against plaintiff on the counterclaim. Thereafter, counsel of record for plaintiff and for GMAC signed a stipulation dated 31 August 1973 by which it was agreed that GMAC was allowed to proceed immediately with its foreclosure procedure under the terms of its Installments Sales Contract. On 19 December 1974 counsel for plaintiff

and counsel for GMAC joined in a consent judgment in which it was recited that plaintiff moved for a voluntary dismissal with prejudice of its claim against GMAC and GMAC moved for voluntary dismissal with prejudice of its counterclaim against plaintiff. Based thereon the court signed the consent judgment dismissing with prejudice both plaintiff's claim against GMAC and GMAC's counterclaim against plaintiff.

On 24 April 1973 defendant GMC filed answer to plaintiff's complaint in which it admitted it had refused to release the truck to plaintiff after making the repairs, but denied that its detention of the truck was illegal.

After taking the depositions of plantiff's president and vice-president, defendant GMC moved for summary judgment in its favor on the ground that there is no genuine issue as to material facts and that on the undisputed facts plaintiff's action will not lie. The motion was further supported and opposed by a number of affidavits.

The court granted GMC's motion for summary judgment, and plaintiff appealed.

*Curtis & Millsaps by Joe T. Millsaps for plaintiff appellant.*

*Kennedy, Covington, Lobdell & Hickman by Edgar Love, III for defendant, General Motors Corporation, appellee.*

PARKER, Judge.

The claim and counterclaim as between plaintiff and GMAC having been dismissed with prejudice by consent of those parties, we are concerned on this appeal only with plaintiff's claim against GMC for wrongful detention of its truck. Plaintiff's sole assignment of error is directed to the order allowing GMC's motion for summary judgment as to that claim. We agree with the trial judge that there is no genuine issue as to the material facts relating to the claim against GMC set forth in plaintiff's complaint and that GMC is entitled to summary judgment in its favor as a matter of law.

The pleadings, depositions, and affidavits establish that there is no dispute that plaintiff delivered its truck to GMC on 22 January 1973 for the purpose of making repairs to a window and to the dash lights, that GMC completed these repairs on

23 January 1973, that it thereafter refused to release the truck to the plaintiff, and that by 27 January 1973 the truck was repossessed by GMAC. Therefore, insofar as plaintiff's claim against GMC is involved, we are here concerned only with the lawfulness of GMC's retention of the truck during the period from 23 January to 27 January 1973.

There is no dispute that GMC actually made the repairs which plaintiff requested and plaintiff has never questioned the reasonableness of GMC's bill in the amount of $46.45 for making the requested repairs. Under G.S., Chap. 44A, Article 1, GMC had a lien on the truck in the amount of its reasonable charges for making the repairs and to preserve that lien it was entitled to retain possession of the truck until its bill was legally satisfied. There is no dispute that at no time prior to 27 January 1973 did plaintiff pay or offer to pay GMC's bill in cash. Plaintiff contends that it was nevertheless entitled to have the truck released to it by GMC on either of two grounds: first, that the repairs were covered by warranty given it by GMC so that GMC had no lawful right to demand payment of its repair bill in cash; or, second, that plaintiff effectively tendered payment by requesting GMC to apply the repair bill against a credit balance which plaintiff asserts it then had against GMC. We first consider plaintiff's contention that the repair bill was covered by warranty.

There is no dispute that when GMC sold the truck to plaintiff on 9 November 1972 it issued to plaintiff its written "New Vehicle Warranty" under which it agreed during the warranty period to make certain repairs without charge. The warranty applied for 12 months from the date of delivery "or until the Vehicle had been driven for 12,000 miles, whichever first occurs." It is undisputed that when plaintiff brought its truck to GMC for repairs on 22 January 1973, the odometer showed it had been driven 29,978 miles. Plaintiff did not then and does not now contend that this mileage was incorrect. On the contrary, when GMC called this to plaintiff's attention at the time in pointing out that the written warranty no longer applied, plaintiff made no protest as to that but contended that the truck was covered by a special verbal warranty which had been given plaintiff by GMC's salesman, Harold Hobbs. In this connection, plaintiff's president, O. W. Rodden, testified by deposition that at the time the truck was purchased "they were checking it out . . . and they dropped a wrench down in the console and fire and

smoke came out of it and Mr. Harold Hobbs was aware of this and said, if we had any electrical problems or anything, it would be covered, they would look out for us, it would be covered by warranty." Rodden and plaintiff's vice-president, James E. Morgan, also signed an affidavit in which they stated that immediately prior to delivery of the truck "a GMC worker dropped a wrench into the motor area of the tractor and caused an electrical short or other damage," and that upon protest by plaintiff that it would not accept the tractor in this condition, "Harold Hobbs, acting in the capacity of new Truck Sales Manager, made assurances to these Affiants that should any electrical problem develop, he would 'take care of it' and he encouraged and insisted that MSR accept delivery." Relying upon these assurances of the New Truck Sales Manager, plaintiff did accept delivery of the vehicle.

Accepting as true these statements in the deposition and affidavits of plaintiff's officers, and viewing them in the light most favorable to the plaintiff as the party opposing the motion for summary judgment, they still avail plaintiff nothing. The written Installment Sales Contract signed by plaintiff and GMC when the truck was purchased on 9 November 1972 contained in bold print the agreement that there were no express warranties other than GMC's written new product warranty, and this written warranty in turn contained the clear statements that it was "the only express warranty" applicable to the truck and that GMC "neither assumes nor authorizes anyone to assume for it any other obligation or liability in connection" with the truck. Quite apart from these limitations, even were we to accept that the verbal warranty which plaintiff contends was given it by Hobbs was enforceable against GMC at the time plaintiff's truck was taken to it for repair, plaintiff's contention that it had a right to release of its truck without paying the repair bill must still fail. There is no dispute that part of the repair work was repair to the truck window. This work had no connection whatever with "any electrical problem," which, according to plaintiff's affidavits, was the only matter in which the special verbal warranty allegedly given plaintiff by Hobbs related. The repair bill itself was itemized and discloses that $25.00 out of the $46.45 total was for repair to the window. Therefore, even accepting plaintiff's version of the special warranty, more than half of the repair bill was not covered thereby, and plaintiff would have no right to insist, as it did, that the entire bill be considered as within the warranty. Thus, even

Enterprises, Inc. v. General Motors Corp.

accepting the special warranty allegedly given by Hobbs as being binding on GMC, plaintiff would have had no right to release of its truck.

We now consider plaintiff's second contention, that it had a right to release of its truck because it effectively tendered payment by requesting that GMC apply the repair bill against a credit which plaintiff asserts it then had with GMC. In their affidavit plaintiff's officers assert "that GMC owed MSR $50.00 for a certain Alternator delivered to GMC in the month of December, 1972." A deposition of one of GMC's employees, Kenneth Thornton, indicates that this $50.00 was not owed to plaintiff by GMC but was a personal obligation owed plaintiff by Thornton. Resolving this discrepancy in plaintiff's favor and accepting plaintiff's version of the matter as true, as we must in passing on defendant's motion for summary judgment, plaintiff still may not prevail. As stated by our Supreme Court, "it is well understood that mutual debts do not *per se* extinguish each other, and that in order for one to constitute a payment of another, in whole or in part, there must be an agreement between the creditor and the debtor that the one shall be applied in satisfaction of the other, in whole or *pro tanto*, according to the respective amounts." *Kilpatrick v. Kilpatrick*, 187 N.C. 520, 522, 122 S.E. 377, 378 (1924) ; *see* 60 Am. Jur. 2d, Payment, § 20, p. 624; 70 C.J.S., Payment, § 32, p. 242. In the present case, the affidavits and depositions of both parties show that GMC never agreed to any offset.

A large part of plaintiff's affidavits and of the depositions of its officers filed as exhibits to the record on appeal in this case deal with plaintiff's contention that in November 1972 it had an agreement with GMC by which GMC agreed to sell plaintiff three new trucks, one of which was the truck involved in this case, and to accept from plaintiff as a down payment thereon four used trucks. Plaintiff contends that GMC "reneged" on this agreement in December 1972. Even if true, these were matters irrelevant to the present litigation.

There being no genuine issue as to any material fact and defendant GMC being entitled to judgment as a matter of law, the order allowing defendant's motion for summary judgment is

Affirmed.

Judges BRITT and VAUGHN concur.