WHITLEY'S ELECTRIC SERVICE, INC. v. HENRY C. SHERROD

No. 94

(Filed 11 November 1977)

**1. Accounts § 1— running account—characteristics**

An ordinary open account results where the parties intend that the individual transactions are to be considered as a connected series rather than as independent of each other, a balance is kept by adjustment of debits and credits and further dealings between the parties are contemplated; such an account is running or current where it continues with no time limitations fixed by express or implied agreement.

**2. Accounts § 1— running account—sufficiency of evidence**

The Court of Appeals properly determined that a current or running account existed between the parties at the time of defendant's final payment where the evidence tended to show that the purpose of notes executed to a bank was to apply the proceeds to the entire debt then owed by defendant and to permit the continued extension of credit; defendant was responsible for payments on the notes so that any payments by plaintiff were charged back to defendant pursuant to their understanding; plaintiff sent defendant regular statements; defendant made payments and plaintiff consequently adjusted the balance in its records; after 10 September 1971 defendant received monthly statements for the entire amount owing without making any objection; and the parties discussed the debt and defendant made an oral promise to pay it.

**3. Limitation of Actions § 6— running account—partial payment—tolling of statute of limitations**

A part payment on a running or current account operates to toll the statute of limitations if made under such circumstances as will warrant the clear inference that the debtor in making the payment recognized his debt as then existing and acknowledged his willingness, or at least his obligation, to pay the balance.

**4. Accounts § 1; Limitation of Actions § 6— running account—partial payment—tolling of statute of limitations**

The Court of Appeals erred in concluding that there was no evidence of circumstances surrounding a payment on an account by defendant which would permit the trial judge to find that it was an acknowledgment by defendant of the entire indebtedness represented by a current account, since the evidence tended to show that defendant made the payment while he was continuing to

make payments on a bank loan which had been executed as a means of refinancing defendant's account with plaintiff; every payment defendant made to the bank was essentially a recognition of his liability to plaintiff; when defendant missed payments on the bank loan, these were charged back to his account by plaintiff according to their original agreement; and after the payment in question, the parties discussed the account and defendant promised to pay the balance.

5. **Limitation of Actions § 6— current account—part payment—statute of limitations tolled as to amount acknowledged**

   A part payment on a current account which constitutes an acknowledgment begins the statute of limitations running anew as to the entire amount that is acknowledged and not merely those items which accrued within three years of the payment.

ON appeal by plaintiff from a decision of the Court of Appeals, reported in 32 N.C. App. 338, 232 S.E. 2d 223 (1977), *Vaughn, J.*, dissenting. The Court of Appeals reversed judgment for plaintiff entered by *Tillery, J.*, at the January 1976 Session of WILSON Superior Court. This case was docketed and argued as No. 117 at the Spring Term 1977.

*Farris, Thomas & Farris, P.A., by Robert A. Farris, Jr., and Thomas J. Farris, Attorneys for plaintiff.*

*Vernon F. Daughtridge, Attorney for defendant.*

EXUM, Justice.

This is an action by an electrical subcontractor against a general construction contractor for money ($18,213.80) claimed to be due for "services rendered" between 6 April 1967 and 10 September 1971. The complaint was filed on 23 October 1973, and a copy of plaintiff's ledger account relating to work performed for defendant was attached to the complaint. Defendant answered denying the debt, pleading the three-year statute of limitations[1], and contending that there had never been a running account between the parties, that plaintiff had furnished labor and material pursuant to a number of separate and distinct contracts, and that more than three years had elapsed since a claim had accrued on any contract. It was undisputed that on 14 May 1971 defendant made a payment of $525.00 to plaintiff.

_____

1. G.S. 1-52.

The most important question presented by plaintiff's appeal concerns the effect of this payment on defendant's statute of limitations defense. Judge Tillery, hearing the case without a jury, found that by this payment defendant "ratified and acknowledged his indebtedness to Plaintiff" and entered judgment for plaintiff in the sum of $17,450.83 with interest from 10 September 1971. The Court of Appeals, being of the opinion that the payment did not revive the entire indebtedness but only so much thereof as accrued within three years prior to the payment, reversed and remanded. Judge Vaughn dissented on the ground that defendant did not properly bring forward his exception to the trial court's crucial finding so as to raise on appeal the question whether there was evidence to support the finding. Defendant did not except specifically to this finding. There appears in the record after the judgment only this language:

> "To the extension [sic] of the foregoing judgment, and to each and every finding of fact, and, conclusion of law therein, contained, defendant Henry C. Sherrod excepts.

> DEFENDANT'S EXCEPTION No. 113."

While we note the defendant's "broadside" exception fails to comply strictly with the requirement of Rule 10(b)(2) of the Rules of Appellate Procedure, appropriate disposition of this appeal requires that we nevertheless proceed to the merits of the case. *See* N.C.R. App. P. 2; *City of King's Mountain v. Cline*, 281 N.C. 269, 188 S.E. 2d 284 (1972).

We hold that there is evidence in this record to support Judge Tillery's finding that the payment was an acknowledgment by defendant of that portion of his account balance which was awarded in the judgment. We consequently reverse the decision of the Court of Appeals remanding the case and order that the judgment of the trial court be reinstated.

Plaintiff offered evidence which tended to show the following: From 1958 to 1971 plaintiff furnished goods and services to defendant in the course of electrical, heating and air-conditioning work on various building and remodeling jobs, and in certain other personal transactions. In October, 1967, defendant owed approximately $14,000.00 and agreed to borrow this amount for payment of the debt. Because its credit rating was more favorable than defendant's, plaintiff executed a $14,000.00 note to Branch

Banking and Trust Company (BB&T). This note was then endorsed by defendant. The loan proceeds were deposited in plaintiff's account at BB&T and credited to defendant on the original obligation. Plaintiff's records reflect this credit. Although plaintiff remained primarily liable on the note, the understanding between the parties was that defendant would make the payments. To secure this note defendant assigned several notes secured by second mortgages to plaintiff, which in turn assigned them to BB&T. Payments on these second mortgage notes were made to defendant's savings account. Defendant was to apply these funds toward payment on the BB&T note. Defendant "paid down" the note and several renewal notes were issued. Defendant then missed a number of payments and plaintiff made these payments to BB&T. These payments were subsequently charged back to defendant's account with plaintiff. Plaintiff continued to work on projects for defendant and made further ledger entries, designated by the name or address of the property owner, that represented both work done pursuant to written contract and "extras" authorized by defendant. Plaintiff's last entry of 14 May 1971 recorded defendant's $525.00 payment, which was not credited to any specific job. Plaintiff billed defendant regularly, and on 10 September 1971 the indebtedness totaled $18,213.80. After that date defendant received monthly statements for the "balance owing" without objecting or denying his obligation. The parties discussed the matter several times, and in October, 1972, defendant orally promised to pay the entire debt.

Defendant's testimony, which frequently conflicted with that of plaintiff's witnesses, may be summarized as follows: Plaintiff performed subcontracting work for defendant beginning in the late 1950's. From 1968 to 1971 a series of separate contracts was entered for work on houses and other buildings. Defendant's customary procedure was to furnish plans and specifications for the proposed job to plaintiff, who then submitted an estimate. The contract price between defendant and a property owner was based on the estimates submitted by plaintiff and other subcontractors. While plaintiff would on occasion perform additional work at the owner's direction, defendant always insisted that these "extras" be billed directly to the customer. When plaintiff nevertheless included the extras in its statement, defendant would demand that those items be taken off the bill. Several

times plaintiff complied temporarily and then resumed its prac-
tice of billing defendant for the extras. Defendant endorsed the
BB&T note and assigned the second mortgage notes to plaintiff
for the purpose of raising $14,000.00 to buy a farm. At that time
he owed plaintiff substantially less than the value of the BB&T
note and understood the transaction as a sale of the second mort-
gage notes to plaintiff. After the assignment he did not receive
the proceeds from BB&T or credit from plaintiff. Although he
claims not to have received the $14,000.00 due him from a "sale"
of the second mortgage notes, defendant never filed an action to
contest his liability on the BB&T note. Defendant paid down the
original and several renewal notes until a $6,550.00 note was
issued in November, 1970, and the indebtedness was placed on a
monthly basis from that time. Defendant continued to make the
monthly payments on this debt, and a balance of approximately
$300.00 still remained due at the time of trial. Plaintiff was never
authorized to pay BB&T or to charge back any of the payments to
defendant. After 10 September 1971 defendant neither discussed
the indebtedness with plaintiff nor received any written demands
for payment.

Plaintiff contends that the evidence shows a course of dealing
which constituted a current or running account between the par-
ties. Moreover, it urges that the payment of 14 May 1971 revived
defendant's entire obligation and not, as held by the Court of Ap-
peals, only that portion which plaintiff can prove was incurred
within three years prior to that payment or prior to any
preceding payments which would have started the statute of
limitations running anew. In other words, plaintiff insists that it
is not required to prove a succession of payments, each within
three years of the previous one and the last within three years
prior to the commencement of the action, in order to recover the
entire debt.

Defendant argues that the evidence shows that the parties
conducted their business under separate contracts for each job
rather than on an account. Even if an account is established,
defendant urges that the partial payment of 14 May 1971 would
not toll the statute of limitations because no evidence would per-
mit the clear inference that by this payment defendant intended
to acknowledge and ratify his entire obligation. At the very least
defendant argues that the statute was tolled only as to those

items which had accrued after 14 May 1968, that the trial court's judgment included recovery for claims which had accrued prior to that date, that plaintiff has not proved successive payments so as to toll the statute on these earlier claims, and that therefore the Court of Appeals correctly reversed and remanded for new trial on these issues.

Plaintiff contended before the Court of Appeals that the evidence showed a "mutual, open and current account" within the meaning of General Statute 1-31 so that the limitations period pursuant to this statute began to run from the time of the "latest item proved in the account on either side." The Court of Appeals correctly held that, because of the absence of reciprocal demands and other characteristics of mutuality, the account alleged by plaintiff does not fall within General Statute 1-31. Plaintiff properly abandoned this contention in its argument before us.

[1] The Court of Appeals also reviewed this area of the law of accounts and summarized the principles which control our decision here. It correctly stated that an ordinary open account results where the parties intend that the individual transactions are to be considered as a connected series rather than as independent of each other, a balance is kept by adjustment of debits and credits, and further dealings between the parties are contemplated. Such an account is "running" or "current" where it continues with no time limitations fixed by express or implied agreement. *McKinnie Bros. v. Wester*, 188 N.C. 514, 125 S.E. 1 (1924); 1 Am. Jur. 2d Accounts and Accounting § 4 (1962). An account may also be "mutual" if there are reciprocal dealings so that each party extends credit to the other and the account is allowed to run with a view to an ultimate adjustment of the balance. *Brock v. Franck*, 194 N.C. 346, 139 S.E. 696 (1927); *McKinnie Bros. v. Wester, supra; Hollingsworth v. Allen*, 176 N.C. 629, 97 S.E. 625 (1918); 1 Am. Jur. 2d Accounts and Accounting § 5 (1962). See G.S. 1-31.

[2] As the Court of Appeals recognized, plaintiff's evidence supports the view that a current or running account existed between the parties at the time of the 14 May 1971 payment. Plaintiff's witnesses testified to this effect: The purpose of the notes executed to BB&T was to apply the proceeds to the entire debt then owed by defendant and to permit the continued extension of credit. Defendant was responsible for payments on the notes so

that any payments by plaintiff were charged back to defendant pursuant to their understanding. Plaintiff sent defendant regular statements. Defendant made payments and plaintiff consequently adjusted the balance in its records. After 10 September 1971 defendant received monthly statements for the entire amount owing without making any objection. They discussed the debt and defendant made an oral promise to pay it. This testimony allows the inference that the parties considered the various construction jobs and the borrowing on the notes as a connected series of transactions and contemplated further dealings with no agreed time limitations.

Defendant's evidence tends to show, on the other hand, that the parties' financial transactions were keyed to distinct and separate contractual arrangements rather than to a current account maintained between them.

The resolution of this evidentiary conflict was for the trial judge. Judge Tillery found facts as follows:

"First, that Plaintiff, Whitley's Electric Service, Inc. furnished goods and services to Defendant, Henry C. Sherrod or to his benefit through September 10, 1971, of a total value of Eighteen Thousand Two Hundred Thirteen Dollars and Eighty Cents ($18,213.80);

"Second, that Defendant, Henry C. Sherrod received and accepted goods and services from Plaintiff, Whitley's Electric Service, Inc. through September 10, 1971 of the total value of Seventeen Thousand Four Hundred Fifty Dollars and Eighty-three cents ($17,450.83) and has failed and refused to pay Plaintiff said amount after demand by Plaintiff;

"Third, that Defendant, Henry C. Sherrod paid Plaintiff, Whitley's Electric Service, Inc. the sum of Five Hundred Twenty Five Dollars ($525.00), ratified and acknowledged his indebtedness to Plaintiff, Whitley's Electric Service, Inc. on May 14, 1971; and that

"Fourth, Plaintiff, Whitley's Electric Service, Inc. commenced this action on October 23, 1973 against Defendant, Henry C. Sherrod and this Court finds as a fact that said action is not barred by the Statute of Limitations; and that

"Fifth, Defendant, Henry C. Sherrod owes Plaintiff, Whitley's Electric Service, Inc. the sum of Seventeen Thousand Four Hundred Fifty Dollars and Eighty-Three cents ($17,450.83), plus interest at the legal rate from September 10, 1971 plus the costs of this action."

It is true that Judge Tillery did not make an express finding that a current account existed between the parties. His findings, however, speak consistently in terms of a *single* indebtedness incurred as plaintiff furnished goods and services to defendant through 10 September 1971. It is clear that Judge Tillery considered this indebtedness to be one obligation arising out of a current account. Such a finding is implicit in his judgment. *See Harrelson v. Insurance Co.*, 272 N.C. 603, 158 S.E. 2d 812 (1968); *Bradham v. Robinson*, 236 N.C. 589, 73 S.E. 2d 555 (1952); 89 C.J.S. Trial §§ 615, 646, 649 (1955).

[3] Where suit is brought more than three years after the claim arises on an account or other contractual debt, the bar of the statute of limitations may be avoided if the debtor has acknowledged his obligation within three years prior to the date the action is filed. A mere promise or similar acknowledgment must be in writing in order to have this effect. G.S. 1-26. A part payment operates to toll the statute if made under such circumstances as will warrant the clear inference that the debtor in making the payment recognized his debt as then existing and acknowledged his willingness, or at least his obligation, to pay the balance. *Bryant v. Kellum*, 209 N.C. 112, 182 S.E. 708 (1935); *Kilpatrick v. Kilpatrick*, 187 N.C. 520, 122 S.E. 377 (1924); *Cashmar-King Supply Co. v. Dowd & King*, 146 N.C. 191, 59 S.E. 685 (1907); *Battle v. Battle*, 116 N.C. 161, 21 S.E. 177 (1895). Such a payment is given this effect on the theory that it amounts to a voluntary acknowledgment of the existence of the debt. From this acknowledgment the law implies a new promise to pay the balance. *Cashmar-King Supply Co. v. Dowd & King, supra*; 51 Am. Jur. 2d Limitation of Actions § 360 (1962).

[4] We think the Court of Appeals erred in concluding that there was no evidence of circumstances surrounding the 14 May 1971 payment which would permit the trial judge to find that it was an acknowledgment by defendant of the entire indebtedness represented by a current account. The trial court found that defendant *acknowledged his indebtedness* by the payment on 14

May 1971. There are circumstances sufficiently probative of an acknowledgment to support this finding. Defendant made the payment while he was continuing to make payments on the BB&T loan. According to plaintiff's evidence, defendant's payments to BB&T were made pursuant to the parties' understanding of the entire transaction as a means of refinancing defendant's account with plaintiff. On this view of their agreement, every payment defendant made to BB&T was essentially a recognition of his liability to plaintiff. These BB&T payments formed the context surrounding defendant's payment to plaintiff on 14 May 1971 and tend to support the trial court's finding of an acknowledgment. Moreover, plaintiff's evidence on the BB&T transaction is sufficient to show that defendant's missed payments were charged back to his account according to their original agreement. Finally, there was evidence tending to show that after the payment on 14 May 1971 the parties discussed the account and defendant promised to pay the balance. In view of the entire course of dealing between the parties, the evidence supports the trial court's finding of an acknowledgment on 14 May 1971.

It would have been preferable if the trial judge had been somewhat more precise in finding exactly what defendant acknowledged by the payment. The exhibits offered at trial help to elucidate his findings and show more clearly that his judgment ought to be upheld. *See Harrelson v. Insurance Co., supra; Bradham v. Robinson, supra.* Defendant's Exhibit 48 is an invoice dated 4 May 1971 for plaintiff's work at 710 Jordan Street. The amount of $611.32 represents a contract price of $525.00 and a charge of $86.32 for "extras." A $525.00 payment is recorded, and the last line designates a remaining balance of $86.32. A similar differentiation between the contract price and extras is reflected in Defendant's Exhibits 23, 24, 25, 26, 39, 41 and 45. When the charges for extras in these invoices are added together, the total is $760.82. If this amount is subtracted from the $18,213.80 ledger balance claimed by plaintiff, a difference of $17,452.98 represents all of the contract and miscellaneous work which plaintiff performed. As Judge Tillery awarded plaintiff $17,450.83, it is obvious that he found defendant to have acknowledged his indebtedness for the remainder of the account balance while continuing to dispute the extras. The discrepancy of $2.15 undoubtedly represents either a mistake in arithmetic or some small item we

have not been able to locate in these voluminous and sometimes illegible exhibits. The insignificant difference favors defendant and may be safely disregarded. The important point is that these exhibits clarify Judge Tillery's formal findings. They support our conclusion that he found, in part expressly and in part impliedly, that on 14 May 1971 defendant acknowledged by part payment an obligation of $17,450.83 on his then current account with plaintiff. As this finding is supported by competent evidence, it will not be disturbed. *Young v. Insurance Co.*, 267 N.C. 339, 148 S.E. 2d 226 (1966); *Stewart v. Rogers*, 260 N.C. 475, 133 S.E. 2d 155 (1963).

While there is language in some of the decisions suggesting that a part payment on a current account revives only those items that accrued within three years preceding the payment, this Court has not so held in any case where (1) a current account was established, (2) the debtor made a partial payment, and (3) there were circumstances showing that in making the payment the debtor intended to acknowledge the entire account and thereby impliedly promised to pay the balance due.

In *Phillips v. Penland*, 196 N.C. 425, 147 S.E. 731 (1929), the plaintiff sued to recover the reasonable value of services rendered to his disabled sister for some ten years prior to her death in 1926. The evidence disclosed that she made payments to him of $3.00 in 1921 and $40.00 in 1925, but the circumstances under which these payments were made did not appear. The trial judge charged the jury that if it found the 1925 payment was made on a current account in such a way as to acknowledge the debt as still existing, it would return a verdict that none of the plaintiff's account was barred by the statute of limitations. On appeal from a verdict and judgment for the plaintiff, this Court held the instruction to be error and ordered a new trial under the following rule:

> "The payment of $40.00, made in 1925, *nothing else appearing*, had the legal effect of preventing the bar of the statute of limitations against the most precarious claim then existing, that is, the one for 1922, and of prolonging its enforceability for three years beyond the date of such payment. . . . The result is that the payment of $40 in 1925 prevented the bar of the statute of limitations as to all claims to a corresponding date in 1922. Moreover, as the services were continuous, such payment constituted a legal recognition of all claims

within the statutory period of three years, that is from said corresponding date in 1922." 196 N.C. at 427-28, 147 S.E. at 733. (Emphasis supplied.) (Citations omitted.)

Notwithstanding the problematic instruction in *Phillips*, which implies evidence of an account and that the 1925 payment was made in recognition of it, we read the decision to state a rule for cases where the evidence is insufficient to show a clear acknowledgment of the entire balance. Not only did the Court note that the circumstances surrounding the two payments did not appear, but the legal effect of the payment is declared with the qualification "nothing else appearing." The implicit holding in *Phillips* is that the record would not support a finding that the debtor intended to acknowledge her entire account debt. Moreover, some question exists whether there was any evidence of a current account in that case.

In *Richlands Supply Co. v. Banks*, 205 N.C. 343, 171 S.E. 358 (1933), the defendant bought merchandise on an open and current account at the plaintiff's store from 1925 through 1929. Several purchases were made shortly before the defendant's last payment on 7 December 1929, and suit was instituted 6 December 1932. The trial court directed a verdict for the defendant upon a plea of the statute of limitations. On appeal this Court awarded a new trial under the rule of *Phillips v. Penland, supra*, stating that "plaintiff is entitled to recover for all purchases made within three years next immediately preceding the cash payment of $70.00 on 7 December, 1929, less any payments by the defendant during said period. The effect of this payment on 7 December was to stop the running of the statute of limitations against all items not then barred, and to fix a new *terminus a quo* from which the statute would start to run anew." 205 N.C. at 345, 171 S.E. at 359. (Citations omitted.) This decision marked the first application of the *Phillips* rule where a running account was clearly present. No consideration, however, was given to the presence or absence of circumstances showing that the debtor's payment acknowledged the entire account.

This Court confronted the problem of successive payments in *Little v. Shores*, 220 N.C. 429, 17 S.E. 2d 503 (1941). There the plaintiff sold milk on an account from July, 1934, to July, 1938. The defendant made intermittent payments during this period,

the last one being on 16 May 1938. Thereafter plaintiff continued to render monthly statements to defendant for the entire amount due, or $185.63. Six further payments were made—the first on 12 November 1938, and the last in January, 1940. Plaintiff's evidence was that defendant during this latter period told him she wished she could pay all she owed and would do so if she had the money. The plaintiff instituted the action on 10 September 1940. The defendant pleaded the three-year statute of limitations, contending that all items accrued on the account prior to January, 1937, or more than three years before the last payment, were barred. The trial court instructed the jury in accordance with defendant's contention. The jury awarded plaintiff $104.50, which represented the agreed value of all milk sold after January, 1937. On plaintiff's appeal this Court awarded a new trial on the ground that the trial court should have used the 12 November 1938 payment, the first in the series of payments made after deliveries had ceased and within three years of suit, from which to measure the recoverable indebtedness. In so holding, however, the Court assumed that the effect of this payment was to remove the bar of the statute only as to those items which had accrued within the three years prior to the payment. It is not clear from the opinion whether consideration was given to any circumstance that might show whether the defendant's payment constituted her acknowledgment of the *entire* account balance.

As an alternative ground for awarding plaintiff a new trial in *Little*, the Court held that the evidence was sufficient to be submitted to the jury on the theory of an *account stated*. It said, 220 N.C. at 431-32, 17 S.E. 2d at 504-05:

"To constitute a stated account there must be a balance struck and agreed upon as correct after examination and adjustment of the account. However, express examination or assent need not be shown—it may be implied from the circumstances. 1 C.J.S., 707.

"An account becomes stated and binding on both parties if after examination the parties [sic] sought to be charged unqualifiedly approves of it and expresses his intention to pay it. *Ray v. Kings Estate*, 179 Pac., 821. The same result obtains where one of the parties calculates the balance due and submits his statement of account to the other who expressly admits its correctness or acknowledges its receipt and prom-

ises to pay the balance shown to be due, *Duerr v. Sloan*, 181 Pac., 407, 1 C.J.S., 711, or makes a part payment and promises to pay the balance. 1 C.J.S., 712.

" 'It is accepted law in this jurisdiction that when an account is rendered and accepted, or when so rendered there is no protest or objection to its correctness within a reasonable time, such acceptance or failure to so object creates a new contract to pay the amount due. *Gooch v. Vaughan*, 92 N.C., 611; *Copland v. Telegraph Co.*, 136 N.C., 11, 48 S.E., 501; *Davis v. Stephenson*, 149 N.C., 113, 62 S.E., 900; *Richardson v. Satterwhite*, 203 N.C., 113, 164 S.E., 845.' *Savage v. Currin*, 207 N.C., 222, 176 S.E., 569."

Judge Tillery's findings and award are clearly based on an acknowledgment by part payment of an indebtedness evidenced by a *current or running account*. While we are not called upon here to decide the point, it appears that the evidence also would have permitted plaintiff to recover this indebtedness on the theory of an *account stated* under the rules declared in *Little*. See also *Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 530-31, 126 S.E. 2d 500, 506-07 (1962).

[5] We hold here that where plaintiff sues on a current account, a part payment which constitutes an acknowledgment begins the statute running anew as to the entire amount that is acknowledged and not merely those items which accrued within three years of the payment. The record before us discloses sufficient evidence of the circumstances surrounding defendant's part payment to support the trial court's finding that by this payment he acknowledged a debt of $17,450.83 as the balance due on a current account. The trial court correctly concluded that this much of plaintiff's claim was not barred by the statute of limitations. *See Smith v. Davis*, 228 N.C. 172, 45 S.E. 2d 51 (1947); *Kilpatrick v. Kilpatrick, supra*, 187 N.C. 520, 122 S.E. 377 (1924); 1 Am. Jur. 2d Accounts and Accounting § 18 (1962).

The judgment of the trial court is, accordingly, reinstated. The judgment of the Court of Appeals is reversed.

Reversed.