DARVELLA JONES, Plaintiff v. HARRELSON AND SMITH CONTRACTORS, LLC, a North Carolina Corporation, and RODNEY S. TURNER, d/b/a Rodney S. Turner Housemovers, Defendants

No. COA05-1183-2

(Filed 16 December 2008)

### 1. Appeal and Error— rules violations—not substantial—citation to record and authority

Appellate Rules violations were not sufficient to warrant dismissal of the appeal or the imposition of sanctions beyond the refusal to review an assignment of error involving prejudgment interest; consideration of that assignment of error was not necessary to prevent manifest injustice to a party. Violations that were not jurisdictional did not warrant sanctions; those violations involved citing to the transcript but not the record and not setting forth the basis of the claim sufficiently.

### 2. Fraud— sale of house following flood—relocation of house—flood plain

The trial court erred by granting a motion for judgment notwithstanding the verdict by defendant H&S on a claim for fraud arising from the sale of a house after a flood and the disputed relocation of the house to a new lot. Viewed in the light most favorable to plaintiff, both knowledge and intent could be attributed to defendant concerning the requirement that the houses be relocated outside the flood plain.

### 3. Damages— sale of house after fraud—fraud and conversion—election

Plaintiff must elect between damages for fraud and damages for conversion in an action arising from the sale and subsequent move of a house after a flood. It is apparent from the court's instructions that the jury's award represented overlapping damages; plaintiff is not entitled to recover the fair market value of the house twice.

### 4. Unfair Trade Practices— fraud or conversion—damages

The trial court erred by dismissing on a directed verdict motion an independently pled unfair practices claim where plaintiff was then allowed to argue that UDTP principles should apply in the calculation of damages for fraud or conversion. However, the jury found for plaintiff on the fraud claim and defendant made

no attempt to argue that it was exempt from Chapter 75, so that the matter was remanded for entry of judgment for plaintiff on her UDTP claim and for trebling of her fraud damages.

### 5. Damages— punitive—unfair trade practices election

The issue of punitive damages was moot where plaintiff, confronted with the possibility of foregoing favorable jury verdicts and retrying her substantive claims, stated on appeal that she elected to receive treble damages pursuant to her UDTP claim.

Judge TYSON concurring in the result in part and dissenting in part.

Appeal by plaintiff from judgment entered 10 May 2005 by Judge Jerry Braswell in Pamlico County Superior Court. This case was originally heard in the Court of Appeals 29 March 2006. Upon remand by order from the North Carolina Supreme Court, filed 7 March 2008.

*William F. Ward, III, P.A., by William F. Ward, III, for plaintiff-appellant.*

*Hopf & Higley, P.A., by Donald S. Higley, II, for defendant-appellee Harrelson and Smith Contractors, LLC.*

GEER, Judge.

This litigation arose out of efforts to remove houses from the 100-year flood plain in Pamlico County following widespread destruction from Hurricane Floyd. A jury below found that defendant Harrelson and Smith Contractors, LLC ("H&S"), who contracted with Pamlico County to remove such homes, committed fraud and conversion in its actions with respect to a house that H&S sold to plaintiff Darvella Jones. The trial court (1) left the conversion verdict intact, (2) granted a directed verdict in favor of H&S on Jones' unfair and deceptive trade practices ("UDTP") claim, and (3) granted judgment notwithstanding the verdict ("JNOV") to H&S on the fraud claim. Finally, the trial court granted judgment in favor of H&S with respect to Jones' claim for punitive damages. Jones appealed to this Court.

On 19 December 2006, a divided panel of this Court dismissed Jones' appeal for violations of the North Carolina Rules of Appellate Procedure. *See Jones v. Harrelson & Smith Contractors, LLC*, 180 N.C. App. 478, 638 S.E.2d 222 (2006). On 7 March 2008, the North Carolina Supreme Court reversed that decision and remanded for reconsideration in light of the Court's decisions in *Dogwood Dev. &*

*Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008), and *State v. Hart*, 361 N.C. 309, 644 S.E.2d 201 (2007). *See Jones v. Harrelson & Smith Contractors, LLC*, 362 N.C. 226, 227, 657 S.E.2d 352, 353 (2008) (per curiam).

Upon reconsideration, we conclude that the appellate rules violations committed by Jones are nonjurisdictional violations for which dismissal of Jones' appeal is not appropriate. We further hold that these violations do not rise to the level of gross or substantial violations that warrant any other type of sanction.

On the merits, we reverse the trial court's entry of judgment in favor of H&S on Jones' fraud and UDTP claims. We, therefore, remand for entry of judgment in the amount of $31,815.00 on the fraud claim, entry of an award of treble damages, and, in the trial court's discretion, an award of attorney's fees under N.C. Gen. Stat. § 75-16.1 (2007).

## Facts and Procedural History

Hurricane Floyd struck North Carolina in September 1999, causing catastrophic flooding in the eastern portions of our State, including Pamlico County. Following the hurricane, Pamlico County, using funds provided by the state and federal governments, instituted a Flood Acquisition Program, which involved buying out landowners who had property located in the 100-year flood plain. One house purchased by the County belonged to Ray and Virginia Respers and was located at 439 Jones Road in the town of Vandemere. The County paid approximately $45,000.00 for the house, which was roughly equal to its appraised value.

The Flood Acquisition Program included a Demolition and Clearance Project designed to clear lots in the flood plain and thus reduce the possibility of property damage from future hurricanes and floods. As part of this project, the County solicited bids for the removal and/or demolition of homes that it had purchased in the flood plain. During the bidding process, H&S submitted a demolition bid in the amount of $60,797.00. Based on this bid, the County awarded H&S the demolition contract for a group of houses in the flood plain, including the Respers' former house.

The County signed a contract with H&S, which included, among other provisions, an option allowing H&S to salvage houses scheduled for demolition by severing them from their current lots and relocating them to lots outside the state-designated flood plain. H&S

decided to exercise that option and salvage several of the houses that the County had designated for removal, including (1) the Respers' former house, (2) another house that belonged to Herman Garrison, and (3) a third house that belonged to the O'Neil family.

Plaintiff Darvella Jones gave John Harrelson of H&S $500.00 in cash for the Respers' former house. She showed Harrelson the piece of land nearby on Swan Point Road where she was currently living in a trailer and where she hoped to eventually place the house. Although it was apparent that the lot she showed Harrelson was inside the flood plain, Harrelson did not mention the contract restriction requiring that the house be relocated outside the flood plain. Instead, Harrelson asked Jones if she knew of anyone who moved houses. When Jones replied that she did not, Harrelson recommended his friend, defendant Rodney Turner.

H&S succeeded in selling the O'Neil house to Clyde Potter and the Garrison house to Herbert Kent. Kent testified at trial that he paid H&S $5,000.00 for his house and that H&S never told him the house would need to be relocated outside the flood plain. Following their purchases, Potter, Kent, and Jones all employed defendant Turner to relocate their houses elsewhere inside the flood plain.

Prior to the move, H&S had not entered into written contracts with any of the purchasers. On 10 September 2002, however, H&S sent a letter to RSM Harris Associates, the consulting firm hired by the County to oversee the buy-out program, in which H&S asserted: "We would like to assure you that the three owners that purchased the houses . . . were informed with a written contract that the houses were to be relocated above the 100-year floodplain and they were to accept all expense & responsibility."

On 13 September 2002, after all three houses had been moved off their original lots and after sending the letter to RSM Harris Associates, H&S mailed a short form to Potter, Kent, and Jones, requesting that each owner sign and return it. The form read as follows:

I, _____, acknowledge all responsibility and expense for the moving and relocation for the house presently located at _____ in _____ County. I undersand the house becomes my property and responsibility as of _____. I understand the house has to be relocated outside the 100 year flood plain.

Jones' form had the blanks completed with the information relating to her house. She signed it because H&S said it needed the form for its records.

On or about 20 September 2002, the County's inspectors learned that the Potter, Kent, and Jones houses had been relocated from their original lots to other lots inside the flood plain.[1] According to a County official, the North Carolina Division of Emergency Management gave the County three possible ways to resolve the issues with the three houses: (1) the houses could be removed to a location outside the flood plain, (2) the houses could be demolished, or (3) the houses could be removed from the buy-out program by reimbursement of the County for the full amount it had paid to the original owners. The County, in turn, informed H&S that the house relocations violated the terms of the Demolition and Clearance contract, explained the three choices, and gave H&S a deadline of 10 December 2002 to "complete corrective action." The County later threatened legal action against H&S if it did not bring the salvaged houses into compliance with the contract.

H&S ultimately dealt with each house in a different manner. With respect to Potter's house, H&S paid more than $22,000.00 to cover the cost of relocating the house to another lot that Potter owned outside the flood plain and putting it on a foundation. Kent, however, refused to move his house a second time, so H&S was forced to reimburse the County in the amount of $52,757.00—the amount paid by the County to the original owner of the house in the buy-out program.

As for Jones' house, Harrelson met with Jones to inform her of the problem. He told her that he had found a lot outside the flood plain on Water Street in the town of Bayboro and offered to relocate her house there at H&S' expense. He told her that the owner of the lot was willing to sell the lot to Jones for $12,000.00, but that H&S would make the first two months' payments for her. Jones told Harrelson she did not want to live on Water Street. Instead, she contacted a realtor and began to make arrangements to purchase a lot in the town of Reelsboro with the intent of moving the house there. On 5 December

---

1. It is unclear from the record when RSM Harris Associates learned that the houses were not in compliance with the County contract. H&S' managing member, Kenneth Smith, acknowledged in an affidavit admitted into evidence that H&S "had been notified" by an unnamed entity that Jones' house was still in the flood plain at some time between the moving of the house on 19 August 2002 and the sending of the 13 September 2002 form.

2002, she provided H&S with written certification that the Reelsboro lot was outside the flood plain.

The next day, 6 December 2002, four days before the County's deadline, H&S hired defendant Turner to move Jones' house from her Swan Point lot to the Water Street lot that H&S had rented at its own expense. Harrelson acknowledged at trial that Jones had never given him permission to move the house, but said that H&S was under pressure to bring the three houses into compliance by 10 December 2002. Jones was driving to work when she discovered that her house was missing.

On 9 December 2002, H&S sent a letter to the County, requesting payment on its contract with the County and stating: "Please consider this request and its urgency because [H&S] has incurred considerable expense in trying to resolve these issues." The County, however, was not satisfied because "the house was still in a potential movable position, still had steel underneath of it, and . . . could still easily be moved back into the flood zone."

On 13 January 2003, H&S' attorney sent a letter to Jones' attorney, requesting "that your client make satisfactory arrangements for governmental approval of the location of this house by securing approval at its current location, by moving it to an appropriate location, or otherwise, putting the controversy to rest before January 29, 2003." The letter also stated that "[a]bsent governmental approval, [H&S] must have the house removed by February 6, 2003. The time period between January 29, 2003 and February 6, 2003 will be used to raze the house if your client fails to make arrangements as set forth above." On 4 February 2003, when Jones had not responded, H&S demolished the house where it sat on the Water Street lot.

Jones filed suit on 10 November 2003 against H&S and Turner, asserting claims for fraud, negligent misrepresentation, conversion, and unfair and deceptive trade practices. H&S filed an answer on 20 January 2004. When Turner made no appearance, Jones obtained an entry of default against him on 2 March 2004.

Both Jones and H&S unsuccessfully moved for summary judgment, and the case was set for trial in February 2005. Upon motion of H&S, the compensatory and punitive damages stages of the trial were bifurcated pursuant to N.C. Gen. Stat. § 1D-30 (2007). At the conclusion of Jones' evidence in the liability phase of the trial, H&S moved for a directed verdict on all issues. The trial court denied H&S'

motion, and the case proceeded with H&S' evidence. At the close of all the evidence, the trial court denied H&S' renewed motion for a directed verdict. At that time, Jones voluntarily dismissed her negligent misrepresentation claim, leaving for decision her claims for fraud, conversion, and UDTP. During the charge conference, however, the trial judge stated that he was revisiting his decision on H&S' motion for a directed verdict and had decided to grant that motion with respect to Jones' UDTP claim.

Jones' claims for fraud and conversion were submitted to the jury. The verdict sheet returned by the jury read:

We, the jury, by unanimous verdict, find as to the Issues as follows:

ISSUE ONE: Was the Plaintiff damaged by the fraud of the Defendant? Answer: Yes

ISSUE TWO: What amount of damages is the Plaintiff entitled to recover? Answer: $31,815

ISSUE THREE: Did the Defendant convert the house relocated at Swan Point Road by the Plaintiff? Answer: Yes

ISSUE FOUR: Did the Plaintiff abandon the home? Answer: No

ISSUE FIVE: What amount is the Plaintiff entitled to recover for the damages for the conversion of the property of the Plaintiff? Answer: $30,000

The morning after the verdict, H&S moved (1) for JNOV as to both claims, (2) for "judgment as a matter of law on the issue of punitive damages," or, in the alternative, (3) for a new trial on all issues. The trial court orally granted H&S' motion for JNOV as to the fraud claim, but denied it as to the conversion claim. The court also entered judgment for H&S as to Jones' claim for punitive damages. Lastly, the court denied H&S' motion for a new trial. Jones then also unsuccessfully moved for a new trial.

On 18 March 2005, Jones filed a motion pursuant to N.C.R. Civ. P. 52, requesting that the trial court make specific findings of fact and conclusions of law with respect to its rulings. The court denied Jones' motion and, instead, on 10 May 2005, entered a short judgment specifying the jury's verdict, setting forth the court's rulings on the parties' various motions, and entering judgment in favor of Jones in the amount of $30,000.00. Jones filed a notice of appeal on 1 June 2005.

Appellate Rules Violations

**[1]** In *Dogwood Dev. & Mgmt. Co.*, our Supreme Court set out the framework for deciding whether to sanction a party for appellate rules violations. The Supreme Court explained that appellate rules violations fall into three types of "defaults": "(1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." *Id.* at 194, 657 S.E.2d at 363. If the error is a nonjurisdictional default, the appellate court "possesses discretion in fashioning a remedy to encourage better compliance with the rules." *Id.* at 198, 657 S.E.2d at 365.

Significantly, "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Id.* Instead, a court may consider other sanctions for such violations. Nevertheless, the *Dogwood* Court cautioned that "the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' " *Id.* at 199, 657 S.E.2d at 366. The Court directed that "[i]n such instances, the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible." *Id.*

This Court originally dismissed Jones' appeal for two violations of the appellate rules. First, it held that Jones' assignments of error violated Rule 10(c)(1) by failing to state the legal basis for Jones' contention that the trial court erred in making its rulings with regard to the claims for fraud, UDTP, punitive damages, and prejudgment interest. *Jones*, 180 N.C. App. at 487, 638 S.E.2d at 229. Second, the Court held that Jones further violated Rule 10(c)(1) by failing to include, after each assignment of error, citations to the record. *Id.* at 487-88, 638 S.E.2d at 229. Under *Dogwood*, neither of these bases for the initial dismissal are jurisdictional, and they do not warrant dismissal of the appeal. The question remains whether any further action by this Court is warranted.

Turning first to the issue of citations to the record, Rule 10(c)(1) provides that "[a]n assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." We note that Jones did not completely disregard this requirement of Rule 10(c)(1). She included appropriate references to the transcript for each of the trial court's rulings challenged on appeal, but either omitted a reference to the record or included an

incorrect citation to the record. Jones' citations to the transcript constitute substantial compliance with Rule 10(c)(1), while her typographical errors in the record citations do not constitute a substantial error or gross violation warranting any sanction.

With respect to the substance of the assignments of error, Jones assigned error to the trial court's (1) granting defendant's motion for a directed verdict on the UDTP claim, (2) granting defendant's motion for JNOV as to the fraud claim and award of compensatory damages, (3) allowing defendant's motion to dismiss plaintiff's claim for punitive damages for conversion, (4) refusal to find conversion to be a UDTP "as a matter of law," and (5) refusal to award interest from the date of conversion of Jones' house. As an initial matter, we hold that the conversion/UDTP assignment of error, although not as precise as it could be, adequately states a legal basis when it asserts that conversion in this case constituted a UDTP "as a matter of law."

The remaining assignments of error, however, simply recite that the trial court erred without explaining why. Rule 10(c)(1) provides that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned."

As for the assignments of error relating to the trial court's rulings *granting* a directed verdict on the UDTP claim, JNOV on the fraud claim, and judgment as a matter of law on punitive damages, we note that the only legal ground that could be relied upon by Jones is that sufficient evidence existed for those claims to go to the jury. *See Alberti v. Manufactured Homes, Inc.*, 94 N.C. App. 754, 758, 381 S.E.2d 478, 480 (1989) ("Motions for directed verdict or judgment notwithstanding the verdict are properly granted only if the evidence is insufficient to support a verdict for the nonmovant as a matter of law."), *aff'd in part, reversed in part, and vacated in part on other grounds*, 329 N.C. 727, 407 S.E.2d 819 (1991). As a result, the omission of the legal basis from these assignments of error— that the evidence was sufficient to go to the jury—does not impair our ability to review the merits of the appeal and could not have prejudiced H&S.

In deciding whether these assignments of error substantially violate Rule 10(c)(1), we are guided by the decisions of the Supreme Court in considering assignments of error asserting that a trial court erred in granting summary judgment. In *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987), the Supreme Court reversed the Court of

Appeals when it dismissed an appeal because the appellant had failed to include in the record on appeal any assignments of error at all as to a summary judgment order. The Supreme Court held:

> The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law. Thus, although the enumeration of findings of fact and conclusions of law is technically unnecessary and generally inadvisable in summary judgment cases, summary judgment, by definition, is always based on two underlying questions of law: (1) whether there is a genuine issue of material fact and (2) whether the moving party is entitled to judgment. On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones. It would appear, then, that notice of appeal adequately apprises the opposing party and the appellate court of the limited issues to be reviewed. Exceptions and assignments of error add nothing.

> This result does not run afoul of the expressed purpose of Rule 10(a). Exceptions and assignments of error are required in most instances because they aid in sifting through the trial court record and fixing the potential scope of appellate review. We note that the appellate court must carefully examine the *entire record* in reviewing a grant of summary judgment. Because this is so, no preliminary "sifting" of the type contemplated by the rule need be performed. Also, as previously observed, the potential scope of review is already fixed; it is limited to the two questions of law automatically raised by summary judgment. Under these circumstances, exceptions and assignments of error serve no useful purpose. Were we to hold otherwise, plaintiffs would be required to submit assignments of error which merely restate the obvious; for example, "The trial court erred in concluding that no genuine issue of material fact existed and that defendants were entitled to summary judgment in their favor." At best, this is a superfluous formality.

*Id.* at 415-16, 355 S.E.2d at 481 (internal citations omitted). The Supreme Court reversed the Court of Appeals and remanded for this Court to review the case on its merits. *Id.* at 417, 355 S.E.2d at 482.

Our Supreme Court recently reaffirmed *Ellis*:

> This Court has long held, *and the law has not been changed*, that for purposes of an appeal from a trial court's entry of summary

**JONES v. HARRELSON & SMITH CONTR'RS, LLC**

[194 N.C. App. 203 (2008)]

judgment for the prevailing party, the appealing party is not required under Rule 10(a) of the Rules of Appellate Procedure to make assignments of error for the reason that on appeal, review is necessarily limited to whether the trial court's conclusions as to whether there is a genuine issue of material fact and whether the moving party is entitled to judgment, both questions of law, were correct.

*Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs.*, 362 N.C. 269, 276-77, 658 S.E.2d 918, 923 (2008) (emphasis added).

To deny consideration of Jones' assignments of error regarding the fraud, UDTP, and punitive damages claims because of her failure to state the only possible basis for review would amount to requiring, in the language of *Ellis*, that Jones engage in a "superfluous formality." *Ellis*, 319 N.C. at 416, 355 S.E.2d at 481. We, therefore, hold that Jones' challenges to the trial court's rulings on her fraud, UDTP, and punitive damages claims are properly before this Court for appellate review.

We reach a different conclusion with respect to Jones' prejudgment interest assignment of error. The legal basis for that claim of error is neither set out in the assignment of error nor apparent from the nature of the error challenged. We do not believe that consideration of this error is necessary "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C.R. App. P. 2. Accordingly, we decline to exercise our discretion under Rule 2 to review this assignment of error.

In sum, in accordance with the Supreme Court's mandate, we have reconsidered this panel's prior dismissal of the appeal in light of *Dogwood* and *Hart*. We hold that no sanction is warranted and that this Court should review Jones' appeal on the merits with the exception of the prejudgment interest assignment of error.[2]

---

2. H&S filed a motion to dismiss the appeal as interlocutory since the default judgment against Rodney Turner, the house mover, was not entered until after Jones appealed to this Court. In this Court's initial opinion, the majority denied the motion because although the appeal was indeed interlocutory at the time it was filed, judgment had since been entered against Turner, leaving nothing to be resolved at the trial level. *See Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 508, 593 S.E.2d 808, 811 (declining to dismiss appeal as interlocutory when plaintiff took voluntary dismissal of remaining claims pending in the trial court after giving notice of appeal but before case was heard in the Court of Appeals), *disc. review denied*, 358 N.C. 739, 603 S.E.2d 126 (2004). We see no reason to revisit that conclusion.

The Merits of the Appeal

A. Grant of JNOV on Fraud Claim

[2] Jones' first argument is that the trial court erred in granting H&S' motion for JNOV on the fraud claim. A motion for JNOV is a renewal of an earlier motion for a directed verdict, and the standards of review are the same. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). "In considering any motion for directed verdict, the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor." *Id.* at 369, 329 S.E.2d at 337-38.

"The essential elements of actionable fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). In this case, the parties have centered their arguments around the third element of fraud, the intent to deceive. The required scienter for fraud is not present without both knowledge and an intent to deceive, manipulate, or defraud. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988).

Here, when the evidence is viewed in the light most favorable to Jones, with all inferences drawn in her favor, both knowledge and intentional deception can be attributed to H&S. There is no dispute that H&S had knowledge of the requirement that the houses be relocated outside the flood plain. Further, Jones showed Harrelson where she planned to move the house, which would permit a jury to infer that H&S knew she intended to move the house within the flood plain. Jones offered evidence that, despite this knowledge, Harrelson said nothing about the requirement that the house be moved outside of the flood plain, but rather helped her find a house mover to move the house to the new location.

Jones' evidence also suggested that once H&S learned that the County was aware that the salvaged houses had not been moved outside the flood plain, H&S falsely told the County's agent that it had

written contracts requiring the new owners to comply with the flood plain requirement. H&S then, according to Jones' evidence, created after-the-fact "contracts" designed to cover-up H&S' failure to disclose the flood plain requirement and failure to have a written contract. Finally, there was evidence in the record that H&S fabricated documents pertaining to other elements of its contract with the County and similarly misled two other purchasers of houses—evidence from which the jury could conclude that H&S had an overall scheme of deceit with respect to the County contract in order to maximize its profit. We hold that a jury could infer an intent to deceive from this evidence.

Apart from challenging the sufficiency of the evidence to prove an intent to deceive, H&S argues on appeal that the form signed by Jones, stating that it was her responsibility to move the house outside the flood plain, amended the parties' contract. According to H&S, Jones was, therefore, limited to suing for breach of contract. H&S, however, cites no authority supporting its assumption that a plaintiff cannot sue for fraud if she has a breach of contract claim. The law is, in fact, to the contrary: a plaintiff may assert both claims, although she may be required to elect between her remedies prior to obtaining a verdict. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256-57, 507 S.E.2d 56, 65 (1998) (discussing principle that a person who was fraudulently induced to purchase property may elect between contract or tort remedy).

Moreover, Jones contends that the form represented an attempt by H&S to cover up its fraud in the sales of the houses and, therefore, is evidence of H&S' intent to deceive. Our courts have acknowledged that evidence insufficient to establish a breach of contract may nonetheless be admissible to prove that a contract was fraudulently induced or that the defendant committed unfair and deceptive trade practices. *See McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 413, 466 S.E.2d 324, 333 (holding that evidence of the parties' negotiations was inadmissible on the breach of contract claim, but was admissible to prove fraud and unfair and deceptive trade practices), *disc. review denied*, 343 N.C. 307, 471 S.E.2d 72-73 (1996). It was for the jury to decide what inferences should be drawn from the form and what weight to give it. Accordingly, we reverse the trial judge's entry of JNOV with respect to the jury's fraud verdict.

B. Damages for Fraud and Conversion

[3] The parties dispute the amount of damages that Jones is entitled to recover in the event of reinstatement of the fraud verdict. Jones

argues that she is entitled to recover both the damages awarded for conversion and the damages awarded for fraud, for a total amount of $61,815.00. H&S contends, however, that recovery of both verdicts would amount to a double recovery. We agree with H&S that Jones is not entitled to both awards, but rather must elect between them.

Jones' fraud claim arose out of H&S' failure to inform Jones that she would need to move the house outside the flood plain, while her conversion claim arose out of H&S' removal and eventual destruction of her house. H&S' fraudulent actions were separate and apart from its acts of conversion and required separate damages instructions. As to Jones' damages from the fraud, the trial court instructed the jury: "The plaintiff's actual damages are equal to the fair market value of the property . . . at the time that the plaintiff was defrauded." It then instructed the jury to award damages for conversion based on the "fair market value of the property at the time it was converted."[3]

It is apparent from these instructions that the jury's awards of $31,815.00 for fraud and $30,000.00 for conversion—each involving the fair market value of the same property at a different point in time—represent overlapping damages. Jones is not entitled to recover the fair market value of the house twice. The doctrine of the election of remedies prevents " 'double redress for a single wrong.' " *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 191, 437 S.E.2d 374, 379 (1993) (quoting *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954)). "[T]he underlying basis" of this rule is "the maxim which forbids that one shall be twice vexed for one and the same cause." *Smith*, 239 N.C. at 368, 79 S.E.2d at 885. Accordingly, we hold that Jones is entitled to judgment in the amount of $31,815.00, the greater of the two overlapping amounts awarded by the jury.

C. Unfair and Deceptive Trade Practices

[4] Jones next assigns error to the trial court's entry of a directed verdict on Jones' UDTP claim. The basis of that ruling is not entirely clear since the trial judge stated that he was dismissing only Jones' independently pled UDTP claim, but would still allow Jones to argue, during the punitive damages stage of the bifurcated trial, that UDTP principles should apply in the calculation of damages, if the jury found liability on the basis of either fraud or conversion.

---

3. The parties have not challenged these instructions on appeal, and therefore we express no opinion regarding whether they were a correct articulation of the measure of damages for each claim.

**JONES v. HARRELSON & SMITH CONTR'RS, LLC**

[194 N.C. App. 203 (2008)]

The court's ruling appears to reflect a misunderstanding of the nature of a claim brought under N.C. Gen. Stat. § 75-1.1 (2007). A UDTP claim is a substantive claim, the remedy for which is treble damages. N.C. Gen. Stat. § 75-16 (2007). Chapter 75 is not a remedial scheme for other substantive claims. *See Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (noting that N.C. Gen. Stat. § 75-1.1 "was enacted to establish an effective private cause of action for aggrieved consumers in this State" (internal quotation marks omitted)). As this Court has stated, "[p]laintiffs can assert both UDTP violations under N.C. Gen. Stat. § 75-1.1 and fraud based on the same conduct or transaction. Successful plaintiffs may receive punitive damages or be awarded treble damages, but may not have both." *Compton v. Kirby*, 157 N.C. App. 1, 21, 577 S.E.2d 905, 918 (2003). The approach followed by the trial court in this case of dismissing the UDTP claim, but allowing counsel to argue it in connection with punitive damages, was in error.

With respect to the trial court's dismissal of Jones' substantive UDTP claim, we need not address Jones' argument that the conversion verdict was sufficient to meet the requirements of that claim because it is well-settled that "a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred." *Bhatti*, 328 N.C. at 243, 400 S.E.2d at 442. *See also Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975) ("Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ."); *State Props., LLC v. Ray*, 155 N.C. App. 65, 74, 574 S.E.2d 180, 187 (2002) ("[A] finding of fraud constitutes a violation of N.C. Gen. Stat. § 75-1.1."), *disc. review denied*, 356 N.C. 694, 577 S.E.2d 889 (2003). "Once the plaintiff has proven fraud, thereby establishing prima facie a violation of Chapter 75, the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S. § 75-1.1." *Bhatti*, 328 N.C. at 243-44, 400 S.E.2d at 442 (internal citation omitted).

Because the jury found in favor of Jones on the fraud claim and because H&S has made no attempt to argue that it is exempt from the provisions of N.C. Gen. Stat. § 75-1.1, Jones is entitled, under *Bhatti*, to recover treble damages under N.C. Gen. Stat. § 75-16. We, therefore, remand for entry of judgment in favor of Jones on her UDTP claim and for trebling of her fraud damages. Upon remand, the trial court must also consider whether to exercise its discretion to award attorney's fees under N.C. Gen. Stat. § 75-16.1. *Bhatti*, 328 N.C. at 247, 400 S.E.2d at 444.

### D. Punitive Damages

[5] Jones also challenges the trial court's decision, rendered between the two phases of the bifurcated trial, to grant H&S' "motion for judgment as a matter of law" as to her claim for punitive damages.[4] In *Lindsey v. Boddie-Noell Enters., Inc.*, 147 N.C. App. 166, 177, 555 S.E.2d 369, 377 (2001), *disc. review denied in part*, 355 N.C. 213, 559 S.E.2d 803, *rev'd in part on other grounds*, 355 N.C. 487, 562 S.E.2d 420 (2002) (per curiam), this Court stated that "where an appellate court concludes that a case that was bifurcated at trial pursuant to N.C. Gen. Stat. § 1D-30 must be remanded for a new trial on the issues relating to punitive damages, we believe the statute requires that the case must also be remanded for a new trial on the issues of liability for compensatory damages and the amount of compensatory damages, so that the same jury may try all of these issues."

In other words, under the bifurcated procedure set forth in § 1D-30, this Court cannot direct a trial court, on remand, to conduct only the punitive damages phase of the bifurcated trial. Rather, any remand requires that the trial court start over at the beginning with the liability phase before proceeding to the punitive damages phase.

We need not address Jones' argument that the motion for "judgment as a matter of law" as to punitive damages was inappropriately timed. *But see Gibbs v. Mayo*, 162 N.C. App. 549, 558-59, 591 S.E.2d 905, 911-12 (holding that trial court did not err in dismissing plaintiff's punitive damages claim *ex mero motu* at the close of plaintiff's evidence during the liability phase when "[t]he only new evidence plaintiffs may have presented in the punitive damages stage was the amount of punitive damages they sought"), *disc. review denied*, 358 N.C. 543, 599 S.E.2d 45 (2004). Confronted with the prospect of foregoing her favorable jury verdicts and retrying her substantive claims, Jones has stated on appeal that she elects to receive treble damages pursuant to her UDTP claim rather than punitive damages. *See Compton*, 157 N.C. App. at 21, 577 S.E.2d at 918 ("Successful plaintiffs may receive punitive damages or be awarded treble damages [under Chapter 75], but may not have both."). Jones has, therefore, rendered the punitive damages issue moot.

---

4. "Judgment as a matter of law" is a phrase used in the federal court system. *See* Fed.R. Civ. P. 50(a). Counsel did not, in his oral motion, cite a rule under the North Carolina Rules of Civil Procedure pursuant to which his motion was made. We presume the motion was, in essence, one for a directed verdict.

**JONES v. HARRELSON & SMITH CONTR'RS, LLC**

[194 N.C. App. 203 (2008)]

Conclusion

In summary, we conclude that, under the test set forth by the Supreme Court in *Dogwood*, any appellate rules violations committed by Jones are insufficient to warrant dismissal of the appeal or the imposition of any other sanctions beyond refusal to review the pre-judgment interest assignment of error. As to the merits of this appeal, the trial court's grant of H&S' JNOV motion is reversed, and the jury verdict finding H&S liable for fraud in the amount of $31,815.00 is reinstated. The trial court's entry of judgment as to Jones' UDTP claim is reversed, and this case is remanded for entry of judgment in the amount of $95,445.00 and for the court to consider, in its discretion, whether to award attorney's fees under N.C. Gen. Stat. § 75-16.1.

We note that H&S, in its brief, requested that this Court remand this case for a new trial. H&S did not, however, cross-assign error to the trial court's denial of its motion for a new trial. Further, H&S has not cited any authority at all supporting the grant of a new trial to H&S. Without the citation of any authority, we decline to grant H&S a new trial.

Affirmed in part, reversed in part, and remanded.

Judge JACKSON concurs.

Judge TYSON concurs in the result in part and dissents in part in a separate opinion.

TYSON, Judge concurring in the result in part and dissenting in part.

We all agree that plaintiff violated multiple nonjurisdictional requirements of the North Carolina Rules of Appellate Procedure. *Dogwood Dev. & Mgmt Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008) (hereinafter referred to as *Dogwood I*). The majority's opinion erroneously disregards prior precedents that impose sanctions for similar violations to those at bar and concludes plaintiff's violations do not rise to the level of "gross" or "substantial" warranting *any type* of sanction. *See Dogwood Dev. & Mgmt Co., LLC v. White Oak Transp. Co.*, 192 N.C. App. 114, 119, 665 S.E.2d 493, 499 (2008) (hereinafter referred to as *Dogwood II*); *Odom v. Clark*, 192 N.C. App. 190, 193, —— S.E.2d ——, —— (2008). Nevertheless, as addressed later in this opinion, the majority dismisses one of plain-

tiff's assignments of error and declines to invoke Appellate Rule 2, despite finding no other sanctions are warranted for plaintiff's multiple rule violations. This holding shows the inherent inequity and danger in non-uniform application of the Rules of Appellate Procedure for all appellate litigants.

Plaintiff's assignments of error numbered 1 through 5 fail to state any legal basis upon which error is assigned in violation of Rule 10(c)(1) and subjects plaintiff's broadside and ineffective assignments of error to dismissal. Consistent with our Supreme Court's mandate in this case and *Dogwood I*, in order to achieve the appropriate disposition of this appeal, this Court should invoke Appellate Rule 2 and proceed to the merits of plaintiff's appeal. 362 N.C. at 196, 657 S.E.2d at 364.

On the merits, the majority's opinion: (1) reverses the lower court's entry of judgment in favor of defendant on plaintiff's fraud and unfair and deceptive trade practices ("UDTP") claims and (2) remands this case to the trial court for (a) entry of judgment in the amount of $31,815.00 on plaintiff's fraud claim; (b) entry of an award of treble damages; and (c) in the trial court's discretion, entry of an award for attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 (2005).

I agree that the trial court erroneously granted defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim and failed to reach plaintiff's UDTP claim on that basis. The trial court correctly addressed plaintiff's UDTP claim based upon defendant's act of conversion. Here, plaintiff's trial was bifurcated pursuant to N.C. Gen. Stat. § 1D-30 (2005). The trial court deprived plaintiff and defendant of the opportunity to submit their evidence to the jury regarding punitive damages and defendant was also denied the opportunity to show it was exempt from the UDTP statute or its non-applicability to these facts. The only appropriate remedy for plaintiff and defendant is to remand this case for a new trial on plaintiff's fraud claim and after the jury's verdict is returned, plaintiff's UDTP claim should be re-considered by the trial court. I respectfully concur in the result in part and dissent in part.

## I. Application of the Rules of Appellate Procedure

In *Dogwood I*, our Supreme Court re-stated that the " 'rules of procedure are necessary . . . in order to enable the courts properly to discharge their dut[y]' of resolving disputes. It necessarily follows that failure of the parties to comply with the rules, and failure of the appellate courts to demand compliance therewith, may impede the

administration of justice." 362 N.C. at 193, 657 S.E.2d at 362 (quoting *Pruitt v. Wood*, 199 N.C. 788, 790, 156 S.E. 126, 127 (1930)) (alteration original). Non-uniformity and inequality in the application of the Rules of Appellate Procedure and the imposition of sanctions thereunder may raise Federal and State constitutional Due Process and Equal Protection issues and strikes at the heart of fair, impartial, and equal administration of justice to all parties. *See State v. Hart*, 361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007) ("Fundamental fairness and the predictable operation of the courts for which our Rules of Appellate Procedure were designed depend upon the consistent exercise of this authority. . . . [I]f the Rules are not applied consistently and uniformly, federal habeas tribunals could potentially conclude that the Rules are not an adequate and independent state ground barring review. Therefore, it follows that our appellate courts must enforce the Rules of Appellate Procedure uniformly."). "It is, therefore, necessary to have rules of procedure and to adhere to them, and if we relax them in favor of one, we might as well abolish them." *Bradshaw v. Stansberry*, 164 N.C. 356, 357, 79 S.E. 302, 302 (1913).

With these principles in mind, our Supreme Court set forth a framework in which North Carolina appellate courts analyze violations of the appellate rules. *Dogwood I*, 362 N.C. at 193, 657 S.E.2d at 362. The Court stated, "that the occurrence of default under the appellate rules arises primarily from the existence of one or more of the following circumstances: (1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." *Id.* at 194, 657 S.E.2d at 363. Here, defendant's noncompliance falls within the third category.

> [W]hen a party fails to comply with one or more nonjurisdictional appellate rules, the court should first determine whether the noncompliance is substantial or gross under Rules 25 and 34. If it so concludes, it should then determine which, if any, sanction under Rule 34(b) should be imposed. Finally, if the court concludes that dismissal is the appropriate sanction, it may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal.

*Id.* at 201, 657 S.E.2d at 367.

### A. Appellate Rules 25 and 34

"Based on the language of [Appellate] Rules 25 and 34, the appellate court may not consider sanctions of any sort when a party's non-

compliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' " *Id.* at 199, 657 S.E.2d at 366.

> In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process. The court may also consider the number of rules violated, although in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review.

*Id.* at 200, 657 S.E.2d at 366-67 (internal citations omitted).

Here, plaintiff failed to: (1) state any legal basis upon which error is assigned in her assignments of error numbered 1 through 5; (2) cite any record page reference to the order she appealed from; and (3) argue or present any reasons or authority in support of her assignments of error numbered 6 and 7.

Plaintiff's assignments of error numbered 6 and 7 are specifically abandoned in plaintiff's brief. Plaintiff states, "Based upon the stated requested relief, the appellant chooses to abandon and forego these last assignments of error." These assignments of error are abandoned and dismissed. *See* N.C.R. App. P. 28(b)(6) (2005) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

Initially, this Court must determine whether plaintiff substantially failed to comply with or grossly violated Appellate Rule 10(c)(1). N.C.R. App. P. 10(c)(1) (2005) provides, in relevant part:

> Each assignment of error . . . shall state plainly, concisely and without argumentation *the legal basis upon which error is assigned.* An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.

(Emphasis supplied).

> There is a presumption in favor of the regularity and validity of judgments in the lower court, and the burden is upon appellant

to show prejudicial error. Without preserved, assigned, and argued assignments of error that identify the pages where the alleged error occurred, the appellate court can only rummage through the record to ascertain error.

*Dogwood II*, 192 N.C. App. at 118, 665 S.E.2d at 497 (internal citations and quotations omitted).

Plaintiff submitted the following assignments of error to this Court:

1. Did the Trial Court, . . . err in . . . granting, . . . the defendant's prior Motion for Directed Verdict on the plaintiff's unfair and deceptive trade practice claim . . . ?

2. . . . [D]id the Trial Court err:

(a) by . . . granting defendant's Motion for Judgment Notwithstanding the Verdict as to the fraud claim and award of compensatory damages; and

(b) by considering and allowing the defendant's Motion to dismiss plaintiff's claim for punitive damages for conversion;

3. Did the trial court err by refusing to make specific findings of fact and conclusions of law in its Judgment and order addressing the rulings on the defendant's Motion for Directed Verdict, Judgment Notwithstanding the verdict, and plaintiff's request to find the conversion by the defendants of plaintiff's house to be an unfair and deceptive trade practice after plaintiff had specifically moved, pursuant to North Carolina Rules of Civil Procedure 52(a)(2) and N.C. General Statute § 1D-50, for such findings?

4. Did the Trial Court err by refusing to find the conversion of plaintiff's house by the defendant, in commerce, to be an unfair and deceptive trade practice, as a matter of law, and refusing to award treble damages and consider plaintiff's request for attorney's fees?

5. Did the Trial Court err by refusing to award, in its judgment, interest from the date of the conversion of the plaintiff's house?

Plaintiff's assignments of error numbered 1 through 5 fail to state any legal basis upon which error is assigned. N.C.R. App. P. 10(c)(1); *see also Walker v. Walker*, 174 N.C. App. 778, 781, 624 S.E.2d 639, 641 (2005) ("[A]ssignments of error that are . . . broad, vague, and unspecific . . . . do not comply with the North Carolina Rules of Appellate

Procedure." (Citation and quotation omitted)), *disc. rev. denied*, 360 N.C. 491, 632 S.E.2d 774 (2006), *cert. denied*, 362 N.C. 92, 657 S.E.2d 31 (2007). Plaintiff's assignments of error "[are] designed to allow counsel to argue anything and everything they desire in their brief on appeal" because "like a hoopskirt—[it] covers everything and touches nothing." *Wetchin v. Ocean Side Corp.*, 167 N.C. App. 756, 759, 606 S.E.2d 407, 409 (2005) (quoting *State v. Kirby*, 276 N.C. 123, 131, 171 S.E.2d 416, 422 (1970)).

In applying *Dogwood I* and *Hart* to other remanded cases, this Court has repeatedly held that an appellant's failure to state any legal basis upon which error is assigned constitutes a "substantial failure" or "gross violation" of the North Carolina Rules of Appellate Procedure. *See Dogwood II*, 192 N.C. App. at 120, 665 S.E.2d at 499; *Odom*, 192 N.C. App. at 198, —— S.E.2d at ——. Under these precedents, this Court must decide what sanction should be imposed under Appellate Rule 34.

Rule 34 of the North Carolina Rules of Appellate Procedure provides:

> A court of the appellate division may impose one or more of the following sanctions: (1) dismissal of the appeal; (2) monetary damages including, but not limited to, a. single or double costs, b. damages occasioned by delay, c. reasonable expenses, including reasonable attorney fees, incurred because of the frivolous appeal or proceeding; (3) any other sanction deemed just and proper.

N.C.R. App. P. 34 (b) (2005). Our Supreme Court has stated, "[i]n most situations when a party substantially or grossly violates nonjurisdictional requirements of the rules, the appellate court should impose a sanction other than dismissal and review the merits of the appeal." *Dogwood I*, 362 N.C. at 200, 657 S.E.2d at 366. However, our Supreme Court held that dismissal of an appeal remains appropriate for the most egregious instances of nonjurisdictional default. *See id.* ("Noncompliance with the rules falls along a continuum, and the sanction imposed should reflect the gravity of the violation. We clarify, however, that only in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate." (Citation omitted)).

North Carolina appellate courts have historically and consistently dismissed "broadside" and "ineffective" assignments of error

JONES v. HARRELSON & SMITH CONTR'RS, LLC

[194 N.C. App. 203 (2008)]

because the appellant failed to bring forward or present any arguable issue for the appellate court to consider and failed to overcome the presumption of correctness in the trial court's judgment. *See Kirby*, 276 N.C. at 131, 171 S.E.2d at 422; *see also London v. London*, 271 N.C. 568, 570, 157 S.E.2d 90, 92 (1967) ("There is a presumption in favor of the regularity and validity of judgments in the lower court, and the burden is upon appellant to show prejudicial error." (Citation omitted)). "Our Supreme Court's opinion in [*Dogwood I*] did not validate hoopskirt assignments of error nor alter the Supreme Court's precedent in *Kirby* or this Court's numerous precedents dismissing broadside and ineffective[] assignments of error." *Dogwood II*, 192 N.C. App. at 124, 665 S.E.2d at 500-01 (citations and quotations omitted). In *Hart* and *Dogwood I*, our Supreme Court neither cited nor discussed *Kirby* and the long line of cases following it. *See Kirby*, 276 N.C. at 131, 171 S.E.2d at 422; *State v. Patterson*, 185 N.C. App. 67, 72-73, 648 S.E.2d 250, 254 (2007), *disc. rev. denied*, 362 N.C. 242, 660 S.E.2d 538 (2008); *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 602, 632 S.E.2d 563, 574 (2006), *disc. rev. denied*, 361 N.C. 350, 644 S.E.2d 5 (2007); *State v. Mullinax*, 180 N.C. App. 439, 443, 637 S.E.2d 294, 297 (2006); *Wetchin*, 167 N.C. App. at 759, 606 S.E.2d at 409.

Although appellate jurisdiction is invoked through the filing and serving of a proper notice of appeal, if an appellant fails to bring forward or present any arguable issue for the appellate court to consider, the presumption of correctness in the trial court's judgment remains and the appeal should be dismissed. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 ("It is not the role of the appellate courts . . . to create an appeal for an appellant."), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). The majority's opinion's attempt to liken plaintiff's assignments of error on these issues to the single issue in an appeal from entry of summary judgment is neither persuasive nor validated by any precedent.

In accordance with our Supreme Court's mandate and following the analysis of *Dogwood I, Hart*, and the aforementioned authority, plaintiff's "broadside" and "ineffective" assignments of error subjects her appeal to dismissal. To be consistent and follow our precedents for imposing sanctions for similar "substantial" and "gross" rule violations, plaintiff's attorney should pay double the printing costs of this appeal. *See Dogwood II*, 192 N.C. App. at 121, 665 S.E.2d at 500 ("Defendant's 'broadside and ineffective[]' assignments of error numbered 1 and 2 should be dismissed. In the exercise of our discretion,

defendant's attorney is ordered to pay double the printing costs of this appeal."); *Odom*, 192 N.C. App. at 197, —— S.E.2d at —— (imposing double printing costs against the defendant's attorney for violations of Rule 10(c)(1)).

## B.  Appellate Rule 2

Once it is determined that a party's "substantial" or "gross" noncompliance with nonjurisdictional requirements warrants dismissal of the appeal, this Court must decide whether to invoke Appellate Rule 2 to attempt to review the merits of plaintiff's appeal. *Dogwood I*, 362 N.C. at 201, 657 S.E.2d at 367. Appellate Rule 2 states:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C.R. App. P. 2 (2005). The decision whether to invoke Appellate Rule 2 is purely discretionary and is to be limited to "rare occasions" in which a fundamental purpose of the appellate rules is at stake. *Dogwood I*, 362 N.C. at 201, 657 S.E.2d at 367. Although Appellate Rule 2 has been applied more frequently in criminal cases where severe punishments were imposed, it has also been invoked in a limited number of civil cases. *Hart*, 361 N.C. at 316, 644 S.E.2d at 205 (citing *Potter v. Homestead Pres. Ass'n*, 330 N.C. 569, 576, 412 S.E.2d 1, 5 (1992); *Elec. Serv., Inc. v. Sherrod*, 293 N.C. 498, 500, 238 S.E.2d 607, 609 (1977)).

Similar to the issue at bar, in *Elec. Serv., Inc.*, our Supreme Court invoked Appellate Rule 2 to review the merits of the appeal after the defendant failed to except to the trial court's "crucial" finding of fact upon which he based his entire appeal. 293 N.C. at 500, 238 S.E.2d at 609. The Court stated "[w]hile we note the defendant's 'broadside' exception fails to comply strictly with the requirement of Rule 10(b)(2) of the Rules of Appellate Procedure, appropriate disposition of this appeal requires that we nevertheless proceed to the merits of the case." *Id.* (citing N.C.R. App. P. 2; *City of King's Mountain v. Cline*, 281 N.C. 269, 188 S.E.2d 284 (1972)). Our Supreme Court's decision to invoke Appellate Rule 2 was based primarily upon the necessity to reverse this Court's erroneous decision. *Id.*

Here, after a thorough review of the record, transcript, and briefs, the "appropriate disposition of this appeal requires that we . . . proceed to the merits of the case." *Id.* Appellate Rule 2 should be invoked to suspend the Appellate rules in order "[t]o prevent manifest injustice to" plaintiff. N.C.R. App. P. 2.

### III. Issues

Plaintiff argues the trial court erred by: (1) granting defendant's motion for directed verdict regarding plaintiff's UDTP claim; (2) granting defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim and dismissing plaintiff's punitive damages claims; (3) refusing to enter specific findings of fact and conclusions of law in its judgment addressing its rulings as specifically requested by counsel pursuant to Rule 52; (4) refusing to find that the conversion of plaintiff's house by defendant constituted an UDTP; and (5) by refusing to award interest from the date of the conversion of plaintiff's house. As noted above, plaintiff specifically abandoned her assignments of error numbered 6 and 7 in her appellate brief.

### IV. Directed Verdict

Plaintiff argues the trial court erred by granting defendant's motion for a directed verdict regarding her UDTP claim.

At the close of all the evidence, during the charge conference, the trial court revisited defendant's motion for directed verdict on the issue of UDTP and stated "[t]he court is of the opinion that after consideration of all the evidence in this case, that the conduct alleged by the plaintiff against the defendant [sic] does not constitute a practice that so offends the public policy by being either unethical, unscrupulous or injurious that it poses a threat to the consuming public." The trial court initially granted defendant's motion for directed verdict regarding plaintiff's UDTP claim. However, after further exchange with plaintiff's counsel, the trial court agreed to revisit this issue after the jury's verdicts were returned:

[Plaintiff's counsel]: . . . So if we come back and the jury comes back and finds either/or, let's say fraud or conversion, will the court then consider the legal remedies allowable under the UDTP finding to address whether that is an unfair trade practice?

[Trial court]: The court will consider those at that time.

This ruling was entirely proper because unless and until the jury returned a verdict holding defendant liable and awarded plaintiff compensatory damages, there were no "damages" for the trial court to consider trebling under the UDTP statute. Any alleged error in the trial court's initial decision to grant defendant's motion for directed verdict regarding plaintiff's UDTP claim was harmless and cured when the trial court announced that it would reserve its ruling on this claim until after the jury's verdicts were returned. This assignment of error is without merit.

### V. Actionable Fraud

### A. Judgment Notwithstanding the Verdict

Plaintiff argues the trial court erred by granting defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim. I agree.

### 1. Standard of Review

[A] motion [for judgment notwithstanding the verdict] is essentially a renewal of an earlier motion for directed verdict. Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted. In considering any motion for directed verdict, the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor. This Court has also held that a motion for judgment notwithstanding the verdict is cautiously and sparingly granted.

*Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337-38 (1985) (internal citations omitted). "On appeal our standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to the jury." *Whitaker v. Akers*, 137 N.C. App. 274, 277, 527 S.E.2d 721, 724 (internal citations and quotations omitted), *disc. rev. denied*, 352 N.C. 157, 544 S.E.2d 245 (2000). A judgment notwithstanding the verdict may also be entered when the trial court determines a fatal flaw exists in the proceedings or a jury's verdict to prevent a judgment from being entered thereon. *See generally* N.C. Gen. Stat. § 1A-1, Rule 50 (2005).

### 2. Analysis

Here, the trial court considered the sufficiency of the evidence to submit plaintiff's fraud claim to the jury on two separate occasions. The trial court first denied defendant's motion for directed verdict on the issue of fraud at the close of plaintiff's evidence and expressly stated, "[t]here is . . . some evidence from which at this point the court concludes that the jury may be able to infer that the concealment of this material fact might be fraudulent[.]" At the close of all the evidence, the trial court again denied defendant's renewed motion for directed verdict on all of plaintiff's claims.

Our Supreme Court has stated:

> When plaintiffs have made out a case sufficient to go to the jury . . . it is error for the trial court to enter judgment for the defendant notwithstanding the verdict. *Since plaintiffs' evidence was sufficient to withstand defendant's earlier motion for a directed verdict, the trial court's entry of judgment notwithstanding the verdict was improper* . . . .

*Bryant*, 313 N.C. at 378, 329 S.E.2d at 342 (citations omitted) (emphasis supplied). The issues before us center upon whether plaintiff's evidence was sufficient to withstand defendant's earlier motions for a directed verdict on the question of actionable fraud.

> While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568-69, 374 S.E.2d 385, 391 (1988) (citation omitted) (original emphasis omitted), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989).

North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege UDTP out of facts that are properly alleged as a breach of contract claim. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) ("In this, plaintiffs' case is remarkably like *Strum v. Exxon Company*, where we found a similar 'attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of

contract claim' to be 'inconsistent both with North Carolina law and sound commercial practice.' " (Quoting *Strum v. Exxon Company*, 15 F.3d 327, 329 (4th Cir. 1994)). This hesitancy remains even if defendant's actions in breaching the contract were intentional. *See Watson Elec. Constr. Co. v. Summit Cos.*, 160 N.C. App. 647, 657, 587 S.E.2d 87, 95 (2003) ("[I]t is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [N.C. Gen. Stat.] § 75-1.1." (Citation and quotation omitted)).

Here, undisputed evidence tends to show that defendant had knowledge of the specific contractual requirement that the salvaged houses had to be relocated to property situated outside the 100 year flood plain. During the trial, defendant conceded multiple times that he had failed to disclose this requirement to plaintiff. Defendant further testified that "there [was] nowhere in the documents" or "public access" where plaintiff could have discovered this requirement. Defendant assisted plaintiff in making arrangements for the relocation of her house and recommended she contact defendant Turner to provide this service for her.

Additional evidence presented at trial tended to show that after defendant was notified by the County that it had breached the terms of the demolition contract, defendant sent a responsive letter dated 10 September 2002, which falsely stated "it had written contracts with each of the three owners of the houses that required the houses to be relocated outside the 100-Year Flood Plain." At that time, defendant did not have written contracts with any of the three owners, including plaintiff. On 13 September 2002, over a month after plaintiff had purchased and relocated her house to Swan Point Road, defendant requested she sign a document stating, "I understand the house has to be relocated outside the 100 year flood plain." Plaintiff testified she complied with this request based upon defendant's assertion that they needed her to sign the document "for [their] records." As a result of defendant's non-compliance with the mandatory provisions of the demolition contract, plaintiff's house was further relocated to Bayboro, North Carolina, without her knowledge or permission, where it was subsequently demolished. Viewed in the light most favorable to plaintiff and giving her the benefit of every reasonable inference that may legitimately be drawn from the evidence, plaintiff presented sufficient evidence to submit her fraud claim to the jury. *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-38.

"Since [plaintiff's] evidence was sufficient to withstand defendant's earlier motion for a directed verdict, the trial court's entry of judgment notwithstanding the verdict was improper[.]" *Id.* at 378, 329 S.E.2d at 342. I concur with the majority's holding that the trial court's order granting defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim should be reversed.

### B. UDTP

Because the trial court erroneously granted defendant's motion for judgment notwithstanding the verdict, it never revisited the issue of plaintiff's UDTP claim on the basis of defendant's fraudulent conduct. Our Supreme Court has repeatedly held that proof of fraud necessarily constitutes a *prima facie* violation of the prohibition against unfair and deceptive acts pursuant to N.C. Gen. Stat. § 75-1.1. *Hardy v. Toler,* 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975); *see also Bhatti v. Buckland,* 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred."); *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 470, 343 S.E.2d 174, 180 (1986) ("It is axiomatic that proof of fraud itself necessarily constitutes a violation of the prohibition against unfair or deceptive trade practices." (Citation omitted)). "Once the plaintiff has proven fraud, thereby establishing *prima facie* a violation of Chapter 75, *the burden shifts to the defendant to prove that he is exempt from the provisions of [N.C. Gen. Stat.] § 75-1.1."* *Bhatti,* 328 N.C. at 243, 400 S.E.2d at 442 (citations omitted) (emphasis supplied).

Here, when the jury returned a verdict in favor of plaintiff for fraud and awarded compensatory damages in the amount of $31,815.00, a *prima facie* violation of N.C. Gen. Stat. § 75-1.1 was established. *Id. Bhatti* requires that the burden of proof shift to defendant "to prove that he is exempt from the provisions of [N.C. Gen. Stat.] § 75-1.1." *Id.* Because the trial court erroneously granted defendant's motion for judgment notwithstanding the verdict on plaintiff's fraud claim, it did not consider plaintiff's UDTP claim pertaining to defendant's fraudulent conduct. Since defendant was the prevailing party at trial on this issue, defendant was never afforded the opportunity to prove it was exempt from N.C. Gen. Stat. § 75-1.1. The majority's opinion erroneously holds that it may impose treble damages by appellate fiat, denies defendant the opportunity to prove it was exempt from the UDTP statute, and usurps the trial court's duty to rule on plaintiff's UDTP claim on remand.

### C.  Punitive Damages

The majority's opinion's holding on this issue is also erroneous because plaintiff asserted a claim for punitive damages based upon defendant's fraudulent conduct. Defendant's motion for a bifurcated trial was granted.

"Our appellate courts have clearly held that actions may assert both [N.C. Gen. Stat. §] 75-1.1 violations and fraud based on the same conduct or transaction and that *plaintiffs in such actions may receive punitive damages or be awarded treble damages, but may not have both.*" *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426, 344 S.E.2d 297, 301 (citations omitted) (emphasis supplied), *disc. rev. denied,* 318 N.C. 283, 347 S.E.2d 464 (1986); *see also Compton v. Kirby,* 157 N.C. App. 1, 21, 577 S.E.2d 905, 918 (2003) ("Plaintiffs can assert both UDTP violations under N.C. Gen. Stat. § 75-1.1 and fraud based on the same conduct or transaction. Successful plaintiffs may receive punitive damages or be awarded treble damages, but may not have both." (Citation omitted)). In *Mapp,* this Court addressed the question of when a plaintiff in such cases must elect the basis of recovery and stated: "We hold that it would be manifestly unfair to require plaintiffs in such cases to elect before the jury has answered the issues *and* the trial court has determined whether to treble the compensatory damages found by the jury and that such election should be allowed in the judgment." 81 N.C. App. at 427, 344 S.E.2d at 301 (emphasis original).

Here, the trial court erroneously: (1) granted defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim; (2) dismissed the jury before it was allowed to consider plaintiff's claim for punitive damages; and (3) dismissed plaintiff's punitive damages claim. After the jury returned a verdict in favor of plaintiff for fraud and awarded compensatory damages, the trial court should have proceeded to Phase II, where plaintiff and defendant would have been afforded the opportunity to submit evidence to the jury relating to punitive damages.

N.C. Gen. Stat. § 1D-30 (2005) provides:

Upon the motion of a defendant, the issues of liability for compensatory damages and the amount of compensatory damages, if any, *shall be tried separately* from the issues of liability for punitive damages and the amount of punitive damages, if any. Evidence relating solely to punitive damages shall not be admis-

sible until the trier of fact has determined that the defendant is liable for compensatory damages and has determined the amount of compensatory damages. *The same trier of fact that tried the issues relating to compensatory damages shall try the issues relating to punitive damages.*

(Emphasis supplied). The trial court's erroneous actions caused plaintiff to be denied the opportunity for the jury to consider punitive damages on her fraud claim and for plaintiff to elect the basis of her recovery after "the jury ha[d] answered the issues *and* the trial court ha[d] determined whether to treble the compensatory damages found by the jury[.]" *Mapp*, 81 N.C. App. at 427, 344 S.E.2d at 301 (emphasis original).

Based upon N.C. Gen. Stat. § 1D-30 and prior governing precedent, the only remedy for the trial court's erroneous granting of the judgment notwithstanding the verdict is to remand plaintiff's fraud claim for a new trial. This Court has stated:

where an appellate court concludes that a case that was bifurcated at trial pursuant to N.C. Gen. Stat. § 1D-30 must be remanded for a new trial on the issues relating to punitive damages, we believe the statute requires that the case must also be remanded for a new trial on the issues of liability for compensatory damages and the amount of compensatory damages, so that *the same jury may try all of these issues.*

*Lindsey v. Boddie-Noell Enters., Inc.*, 147 N.C. App. 166, 177, 555 S.E.2d 369, 377 (2001) (emphasis supplied), *disc. rev. denied in part*, 355 N.C. 213, 559 S.E.2d 803, *per curium rev'd on other grounds*, 355 N.C. 487, 562 S.E.2d 420, *reh'g denied*, 355 N.C. 759, 565 S.E.2d 668 (2002). Further, prior to the codification of N.C. Gen. Stat. § 1D-30, our Supreme Court stated:

A bifurcated trial is particularly appropriate where separate submission of issues avoids confusion and promotes a logical presentation to the jury and where resolution of the separated issue will potentially dispose of the entire case. *The better practice is to retain the same jury for all issues, even though it may hear the issues at different times.*

*In re Will of Hester*, 320 N.C. 738, 743, 360 S.E.2d 801, 804 (internal citations omitted) (emphasis supplied), *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987).

The trial court's erroneous granting of defendant's motion for judgment notwithstanding the verdict and dismissal of the jury before it heard evidence relating to punitive damages requires us to remand this case to the trial court for a new trial "on the issues of liability for compensatory damages and the amount of compensatory damages" regarding plaintiff's fraud claim. *Lindsey,* 147 N.C. App. at 177, 555 S.E.2d at 377; N.C. Gen. Stat. § 1D-30. *If* the jury returns a verdict in favor of plaintiff and awards compensatory damages for fraud, the trial court shall then proceed to Phase II and the parties shall be allowed to submit evidence to the jury regarding punitive damages. After the jury renders its decision on punitive damages, the trial court shall consider whether defendant's actions constituted UDTP as a matter of law. If defendant fails to prove that it is exempt from the provisions of N.C. Gen. Stat. § 75-1.1, plaintiff must then elect the basis of her recovery between punitive and treble damages. *Bhatti,* 328 N.C. at 243, 400 S.E.2d at 442. The trial court's order granting defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim is properly reversed and, under controlling case law and statutes, this case must be remanded for a new trial. *Lindsey,* 147 N.C. App. at 177, 555 S.E.2d at 377; N.C. Gen. Stat. § 1D-30.

## D.  Erroneous Jury Instructions

Because our statutes and case law require this Court to award plaintiff a new trial on her fraud claim, I note in passing that the trial court erroneously instructed the jury on the measure of actual damages, if any, to be awarded for fraud. Here, the trial court stated:

The second issue reads: What amount is the plaintiff entitled to recover for damages for the fraud of the defendant.

If you have answered the first issue yes in favor of the plaintiff, the plaintiff is entitled to recover nominal damages, even without proof of actual damages. Nominal damages consist of some trivial amount, such as one dollar, in recognition of the technical damages incurred by the plaintiff. The plaintiff may be entitled to recover actual damages.

On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove by the greater weight of the evidence the amount of actual damages caused by the fraud of the defendant. *The plaintiff's actual damages are equal to the fair market*

*value of the property at the time it was—at the time that the plaintiff was defrauded. . . .*

(Emphasis supplied). It appears the trial court was reading the North Carolina Pattern Jury Instruction 810.60 regarding "property damage" in relation to plaintiff's fraud claim. However, plaintiff never alleged that her property had been damaged by defendant's fraudulent conduct.

At trial, plaintiff testified that had she been informed of the contractual provision requiring the relocation of the house to property situated outside the 100 year flood plain, she would not have purchased the house from defendant. Plaintiff explained that the lot on Swan Point Road, where she originally moved the house, was "family" property and she did not possess the money required to buy a separate lot.

This Court has stated:

> It is elementary that a plaintiff in a fraud suit has a right to recover an amount in damages which will put him in the same position as if the fraud had not been practiced on him. *The measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, and is potentially trebled by N.C.G.S. § 75-16.* It is the jury's responsibility to determine the exact amount of damages from the evidence presented at trial.

*Godfrey v. Res-Care, Inc.,* 165 N.C. App. 68, 79, 598 S.E.2d 396, 404 (internal citations and quotations omitted) (emphasis supplied), *disc. rev. denied,* 359 N.C. 67, 604 S.E.2d 310 (2004).

The majority's opinion correctly states, "[defendant's] fraudulent actions were separate and apart from its acts of conversion and required separate damages instructions." Here, the undisputed evidence shows plaintiff purchased the house from defendant for the price of $500.00 and paid defendant Turner the sum of $4,300.00 to relocate the house to Swan Point Road. A jury verdict in the amount of $4,800.00 would place plaintiff "in the same position as if the fraud had not been practiced on [her]." *Id.* Although the record does not disclose the precise reason the trial court granted defendant's motion for judgment notwithstanding the verdict, it is possible the trial court used defendant's motion to correct its instructional error on fraud in the inducement.

## VI.  Conversion

### A.  Punitive Damages

Plaintiff further argues the trial court erred by granting defendant's motion to dismiss plaintiff's claims for punitive damages regarding her conversion claim.

Our Supreme Court has stated, "where sufficient facts are alleged to make out an identifiable tort, . . . the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976) (citation omitted).

> The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself . . . [o]r it may be established by allegations sufficient to allege a tort where that tort, *by its very nature*, encompasses any of the elements of aggravation.

*Id.* (internal citation omitted) (emphasis original). In *Morrow v. Kings Department Stores*, this Court held that "[c]onversion is not a tort which by its very nature contains elements of aggravation." 57 N.C. App. 13, 24, 290 S.E.2d 732, 739 (citation omitted), *disc. rev. denied*, 306 N.C. 352, 294 S.E.2d 210 (1982). Plaintiff's complaint is devoid of any allegations of aggravating circumstances regarding defendant's act of conversion. *Id.* This assignment of error is without merit. The trial court's ruling on this issue is properly affirmed.

### B.  UDTP

Plaintiff also argues the trial court erred by refusing to find the conversion of plaintiff's house to be an UDTP as a matter of law. I disagree.

"Under [N.C. Gen. Stat. §] 75-1.1, an act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). Here, plaintiff contends the act of defendant moving her house from Swan Point Road to a lot located in Bayboro, North Carolina and its subsequent destruction are sufficient to establish a claim for UDTP. However, with regards to her conversion claim, plaintiff failed to allege any aggravating factors or offer

any evidence tending to establish defendant engaged in an act or practice that meets the definition of unfair or deceptive as defined by our appellate courts. *Id.* Plaintiff failed to show the trial court erred in concluding that defendant's act of conversion did not constitute an UDTP. This assignment of error is without merit. The trial court's ruling on this issue is properly affirmed.

## C. Interest

The majority's opinion inexplicably and erroneously holds that plaintiff's assignments of error violate nonjurisdictional requirements of the Appellate Rules, but finds these violations are not a "substantial failure" or "gross violation" of the appellate rules to warrant sanctions. Nonetheless, it essentially dismisses plaintiff's assignment of error relating to the accrual of interest. In its mandate to this Court, our Supreme Court remanded this case to us "for reconsideration in light of *Dogwood Development & Management Co. v. White Oak Transport Co.*, 362 N.C. [191], [657] S.E.2d [361] (2008) (303A07), and *State v. Hart*, 361 N.C. 309, 644 S.E.2d 201 (2007)." *Jones v. Harrelson and Smith Contr'rs, LLC*, 362 N.C. 226, 227, 657 S.E.2d 352, 353 (2008). In light of that mandate and consistent with *Dogwood I*, I address this assignment of error.

Plaintiff argues the trial court erred by refusing to award interest from the date of the conversion of plaintiff's house. I disagree.

Plaintiff's argument in support of this contention misconstrues the holding in *Lake Mary Ltd. Partnership v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546, *disc. rev. denied*, 354 N.C. 363, 557 S.E.2d 546 (2001). In *Lake Mary*, the trial court entered a directed verdict against the defendant for conversion, breach of contract, and unfair and deceptive practices arising from the retention of tenant rent checks. *Id.* at 530, 551 S.E.2d at 551. On appeal, the defendant argued, *inter alia*, that the trial court erred by "awarding interest from the date each check was 'converted,' as opposed to the date the complaint was filed." *Id.* at 532, 551 S.E.2d at 552.

This Court emphasized that the trial court had entered directed verdict against the defendant for breach of contract and conversion and stated "the breach occurred on the dates that [the defendant] deposited or converted each check." *Id.* at 532-33, 551 S.E.2d at 552. This Court held that pursuant to N.C. Gen. Stat. § 24-5(a), the trial court properly awarded interest "from the date of breach." *Id.* at 532, 551 S.E.2d at 552; *see also* N.C. Gen. Stat. § 24-5(a) (2005) ("In an

action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach.").

Here, plaintiff alleged claims for fraud, negligent misrepresentation, conversion, and UDTP. Plaintiff failed to allege any claim for breach of contract. N.C. Gen. Stat. § 24-5(b) (2005) provides that "[i]n an action *other than contract,* any portion of a money judgment designated by the fact finder as compensatory damages bears interest *from the date the action is commenced* until the judgment is satisfied." (Emphasis supplied). This assignment of error is without merit. The trial court's ruling on the date of accrual of interest on plaintiff's conversion claim is properly affirmed.

## VII.  Conclusion

Plaintiff's failure to state any legal basis for her assignments of error numbered 1 through 5 constitutes a "substantial failure" or "gross violation" of the North Carolina Rules of Appellate Procedure. *Dogwood II*, 192 N.C. App. at 121, 665 S.E.2d at 499; *Odom*, 192 N.C. App. at 198, —— S.E.2d at ——. Plaintiff's "broadside" and "ineffective" assignments of error numbered 1 through 5 subjects her appeal to dismissal. *Kirby*, 276 N.C. at 131, 171 S.E.2d at 422. Pursuant to our Supreme Court's mandate remanding this case and in the exercise of this Court's discretion, Appellate Rule 2 should be invoked to review the merits of plaintiff's appeal.

Viewed in the light most favorable to plaintiff and giving her the benefit of every reasonable inference that may legitimately be drawn from the evidence, sufficient evidence was presented to submit plaintiff's fraud claim to the jury. *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-38. We all agree the trial court erroneously granted defendant's motion for judgment notwithstanding the verdict regarding plaintiff's fraud claim.

The trial court also erroneously dismissed the jury prior to its consideration of plaintiff's punitive damages claim based on defendant's fraudulent actions. *See Newton*, 291 N.C. at 112, 229 S.E.2d at 301 ("[F]raud is . . . one of the elements of aggravation which will permit punitive damages to be awarded." (Citation omitted)).

The only remedy available to plaintiff under N.C. Gen. Stat. § 1D-30 and prior precedents is to remand this case to the trial court for a new trial "on the issues of liability for compensatory damages and the amount of compensatory damages" regarding plaintiff's fraud claim. *Lindsey*, 147 N.C. App. at 177, 555 S.E.2d at 377. If the jury

HELM v. APPALACHIAN STATE UNIV.

[194 N.C. App. 239 (2008)]

returns a verdict for plaintiff and awards punitive damages, the trial court must conduct a hearing to allow defendant to show it is exempt from the UDTP statute. If the trial court rules as a matter of law that defendant's conduct constituted UDTP, plaintiff must then elect the basis of her recovery. Plaintiff must choose between the punitive damages verdict or the trebling of the jury's award of compensatory damages.

The trial court's entry of judgment on plaintiff's conversion claim should remain undisturbed and its ruling on the accrual of interest is properly affirmed. I vote to affirm in part, reverse in part, and remand for a new trial on plaintiff's fraud and UDTP claims. I respectfully dissent.